PRITCHETT *v.* THE STATE.

1. It appearing that in a trial for murder the jury were kept together in charge of an officer from the time they were impanelled until the verdict was rendered, there was no error in not instructing them at recess, and when the court adjourned at night, not to discuss the case among themselves nor allow any one else to speak to them about it.
2. It is not proper for the presiding judge to absent himself from the court-room during the trial of a murder case, without suspending

v 92-5

the trial during his absence; but such conduct on the part of the judge will not necessitate the granting of a new trial where it appears that he was absent only a few moments for a necessary purpose during the argument of defendant's counsel, it not appearing that any injury resulted therefrom to the accused, or that a motion to have a mistrial declared was made. In *Hayes* v. *The State,* 58 *Ga.* 35, a new trial was granted not alone because of similar conduct on the part of the judge, who absented himself during the examination of a witness for the State, but also because of serious errors in the charge. The ruling made in the case at bar is supported by *O'Shields* v. *The State,* 81 *Ga.* 301.

3. Whether, under all the facts in evidence, an attempt by an arresting officer and his *posse* to commit a serious personal injury on another will reduce to manslaughter a homicide committed by the latter, is a question for the jury under a proper charge from the court, and not a question of law to be decided in the first instance by the presiding judge.

4. Where two instances of resisting an arrest stood in immediate connection one to the other, if the first was by a combination of several persons, some of whom participated in the second, the circumstances and conduct attending the first are admissible in evidence against a person who was not connected therewith but who did participate in the second as a friend of the individual sought to be arrested, and a charge of the court which explains to the jury the reason for admitting the evidence is not erroneous.

5. Where the evidence of a homicide is not wholly circumstantial, a request to charge the jury based on a contrary theory should be denied.

6. A charge which relates to the turning points of a case, if not erroneous as to the points specified in the motion for a new trial, the other points not being referred to in the motion, is no cause for a new trial.

7. A charge that the State claims so and so, even when its propositions are not in the most natural order but are inverted and somewhat involved, does not infringe on the rule of law forbidding the judge to intimate his opinion on the evidence or what it establishes.

8. Where counsel goes out of the evidence and states an irrelevant fact which he contends he arrives at by inference from the evidence, it is not cause for a new trial that the presiding judge, in interdicting a repetition of the statement, says that of his own knowledge the real truth of the irrelevant matter was thus and so.

9. When the court inadvertently omits to instruct the jury as to the form of the verdict in case they find the accused not guilty, the omission may be repaired by recalling the jury after they have retired to their room and then suggesting the proper form.

June 12, 1893.

Indictment for murder. Before Judge RICHARD H. CLARK. DeKalb superior court. February term, 1893.

Pritchett was tried upon a special presentment made at the February term, 1888, charging him, Lovejoy and Harrison with the murder of Hurst. See reports of the cases of Lovejoy and Harrison in 82 *Ga.* 87, and 83 *Ga.* 129. Pritchett was found guilty, with a recommendation to imprisonment for life. His motion for new trial was overruled, and he excepted. The motion contains, in addition to the general grounds, the following:

1. The court erred in not instructing the jury, at recess and when the court adjourned at night, not to discuss the case among themselves, nor allow any one else to speak to them about the case; and in failing to instruct the officer in charge of the jury as is usual in such cases, but only saying: "The sheriff will see that you are taken care of." The jury were kept together from the time the first juror was chosen until the verdict was rendered.

2. The judge erred in leaving the bench and the court-room pending the first argument, and going to the water closet, without suspending proceedings during his absence. As to this ground the judge states: He has no remembrance of leaving the bench at any time while the case was being tried; but as both counsel for defendant have made affidavit that he left the bench while one of them was making his argument, he accepts that as true and accompanies it with this explanation: It is his practice when he must leave the bench to attend to the lighter call of nature, and defendant's counsel is speaking, to go out quietly to keep from interrupting his argument, which, as every lawyer knows, may seriously impair the argument and its effect. If counsel for the State is speaking when he has to leave, he first gets the consent of defendant's counsel so as not to impair his argument. In this case it seems he went out when one

of defendant's counsel was speaking, and cannot see how what was intended for a benefit, and was a benefit, could be converted into an error.

3. Error in refusing to charge, as requested: "If you believe from the evidence that the defendant shot and killed J. E. Hurst, and that the killing was without malice, either express or implied, and was done without any mixture of deliberation whatever, but was voluntary upon a sudden heat of passion; and if you believe further from the evidence, that there was an attempt on the part of the *posse* of white men then and there to commit upon him, the defendant, a serious personal injury, or if you believe from the evidence that there were other equivalent circumstances to justify the excitement of passion and to exclude all idea of deliberation or malice, either express or implied, you could not find the defendant guilty of murder. If you believe from the evidence that the defendant and another, by the consent of the sheriff of said county, were taking away Wesley Hubert, and after such consent the three had left and were then violating no law, and at the instance of one of the white citizens of your county the arrest of Wesley Hubert was demanded, and being armed with pistols pursued the defendant and Wesley Hubert, and overtaking them attempted the arrest of said Hubert, and in such attempt undertook to do violence to the person of the defendant, he would be authorized in law to protect himself against such violence, and you could not find him guilty of murder, nor of any other offence."

4. Error in charging: "I have permitted introduction of evidence before you as to the first arrest, and I have done so with the view that you might have all the facts necessary for you to determine whether there was a combination by Wesley Hubert and his friends to resist the officers; and that if you believe it was a forcible resistance in the first instance, and that when it was

attempted to arrest him again there was another forcible resistance, that it was necessary for you to have it before you to throw light upon it, that you may judge whether the second arrest and resistance, and what occurred on the second arrest, was done for the purpose of resisting the officer in making the arrest; that is all. It is not material that all the parties who were engaged in the first resistance to the arrest should be engaged in the second resistance. It is only for you to determine whether there was first a rescue and a resistance to the second arrest, a rescue at first, and the same thing continued afterwards, to hold these persons responsible who were engaged in the second resistance. But if the testimony should not be so strong as to produce upon your minds the conviction, beyond a reasonable doubt, that the defendant, Brack Pritchett, actually fired the shot which killed Hurst, then see whether that testimony satisfies your minds, and beyond a reasonable doubt, that Brack Pritchett was one who was forcibly resisting the officers and that he fired his pistol in furtherance of that resistance; if he did so, it does not matter who fired the fatal shot, and you should believe moreover, of course, that there was a combination between these men to resist these officers, that they were all actuated by a common intent to do so; and I charge you upon that part of it that it does not excuse Hubert, nor these other men who were aiding him, if they were aiding him to resist the arrest, because some one had said to them that Mr. Austin, or any one else who was pursuing them for the purpose of the arrest, had said that they could leave and that they would not arrest them then. The officer, even when he said that, had the right to change his mind, and the arresting officer had the right to adopt a different policy; the whole thing being based upon the right to arrest Hubert. Because the officer declines to arrest at a particular time does not bind him to give up his right to

arrest, even in a short time afterwards, and hence it is no defence, that circumstance, if you should believe it from the evidence, is no defence, always provided that the man Wesley Hubert had laid himself amenable to the law; that Rogers was the constable and had a warrant; and that Hurst was the lawful marshal of the town of Decatur. So, if those things are correct, why they would have had the right to have made the second arrest in the way they did, just as they would have had to make the arrest if they had not desisted from the arrest."

5. Error in refusing to charge: "The evidence being circumstantial in this case as to who killed said Hurst, before you can convict the defendant on it the circumstances must be so strong as to exclude every other reasonable hypothesis except that of the defendant's guilt."

6. Error in charging: "Well, those two points that I have given you in charge are the turning points in this case, provided, of course, as I said to you twice, that the arrest was a legal one as I have described to you. Did this defendant, Pritchett, fire the shot that killed Hurst?" The alleged error is, that the court expressed an opinion as to what were the turning points in the case.

7. Error in charging: "A circumstance given in evidence here, and which you have the right to consider, is, that this defendant fled in the first instance, and in the second instance he successfully made his escape, and that that was done last August five years ago; and that within the last few months he has been apprehended. Now, that is what the State claims; that those are the facts that are given in evidence before you, and from which you must come to your conclusion." Alleged to be error as clearly expressing an opinion.

8. Error in the following: One of defendant's coun-

sel, while making the concluding argument relative to defendant's flight, referred to the fact that defendant was fearful he would be mobbed unless he left, and, in addition to what defendant in his statement said relative to that, counsel stated further that defendant when he was apprehended was not put in DeKalb county jail, but in Fulton county jail and there remained until within a few days since; and from that state of facts counsel was about drawing an inference that there was ground for the defendant's belief that he would be mobbed, when the court abruptly and most emphatically stated to counsel: "Stop, Mr. Jordan; there is no such evidence, and I know the contrary to be true." Counsel stated he thought he had a right to draw an inference from a given state of facts, but the court said that he would not permit it.—As to this ground the judge states: In trying to explain defendant's flight Mr. Jordan stated it was because he was afraid of personal violence being done him by the citizens of DeKalb county; and then stated in verification of that, as a fact, that when apprehended he was placed in Fulton county jail to make him safe from the citizens of DeKalb. At this point the solicitor-general made the point that Mr. Jordan had no right to state that. The court inquired if there was any evidence of that before the jury, and received for answer, without contradiction, that there was none. The court then stated he was placed in Fulton jail by the court's order, because quite a number of prisoners had in a body escaped from DeKalb jail.

9. The court forgot to charge the jury as to the form of their verdict in case they found defendant not guilty, until after the jury had retired to their room, and then directed that the jury be brought in, when the proper charge was given.

JORDAN & ROBINSON, for plaintiff in error.

JOHN S. CANDLER, solicitor-general, contra.

BLECKLEY, Chief Justice.

1. We are aware of no law which constrains the judge who presides in a trial for murder, to instruct the jury not to discuss the case among themselves nor to allow any one else to speak to them about it. The judge may give such instruction when he thinks proper to do so, and the presumption is that he will give it whenever he deems the circumstances call for it. In this case the jury were kept together in charge of an officer from the time they were impanelled until the verdict was rendered. There is no cause for suspecting that they either discussed the case among themselves improperly, or that they were spoken to concerning it by any outside person, or that the officer in charge of them failed to perform his whole duty.

2. In relation to the judge leaving the bench and absenting himself from the court-room for a necessary purpose during a short interval, without suspending the trial on account of his absence, this is sufficiently treated of in the second head-note.

3. The actual grade of a homicide is to be ascertained by the jury on all the facts in evidence and with the aid of a proper charge from the court touching the law of the case. It is not the duty of the court to decide in the first instance, as a question of law, whether an attempt by an arresting officer and his *posse* to commit a serious personal injury on the accused, would reduce a killing done on the occasion to manslaughter. Under some circumstances it would, and under others the killing would even be reduced to justifiable homicide. The court's charge on the law should be such as to enable the jury to distinguish, one from another, all the grades of homicide which the jury under the facts of the particular case ought to investigate and consider, but beyond this the court could not go without trenching upon the province of the jury. They are to determine whether

in the particular instance anything whatever done to the accused would make the killing manslaughter rather than murder or justifiable homicide.

4. Pritchett, the accused, did not participate in the first resistance offered to the arrest of Hubert. There were indications in the evidence that that resistance was made by a combination of several persons, and that some of these together with Pritchett participated in the second resistance. The second stood in close connection with the first in point of time, the interval between them being very short. We agree with the trial judge that the circumstances and conduct attending the first were admissible in evidence against Pritchett who, although he took no part in the first, shared, with some who did, in the work of making the second, and whilst so engaged committed the homicide. We also think that the court did not err in charging the jury upon the subject as set forth in the official report, though we must admit that as to mere style and clearness the charge was not altogether felicitous.

5. There was some direct evidence that the killing was done by the accused. This being so, the court properly declined to charge the jury as requested on circumstantial evidence, the request assuming that the evidence as to the person who did the killing was circumstantial only.

6. It is not error for the court in its charge to the jury to specify the turning points in the case and designate them as such. The motion for a new trial, after stating what the court charged on this subject, complains of it as error "in that the court expressed an opinion as to what were the turning points in the case." The motion fails to mention or suggest any others as turning points, or to say that these were not. The complaint is that the court expressed an opinion at all as to what were the turning points in the case. Were it alleged that

those specified were not all the turning points, or that certain others should have been included in the enumeration, we might consider the criticism well founded, but this is quite a different matter from holding that the court cannot express any opinion whether it be correct or incorrect as to what are the turning points. The assignment of error does not call in question the correctness of the opinion, but only the right to express it. For the purpose of dealing with this assignment, there being no other turning points suggested and those specified not being denied to be such, we can take what the charge affirms touching this as being correct, and so taking it the charge can be upheld.

7. At first view what the court charged on the subject of flight, escape and recapture does certainly appear as infringing upon the rule of law which forbids the judge to intimate his opinion on the evidence or what it establishes; but when the whole paragraph is read to its close, it is reasonably apparent that the court meant to state to the jury, not what the evidence was or what it proved, but what the State claimed it was and established. To express this meaning the terms of the proposition contained in the paragraph must, it is true, be taken in an order which is inverted and not the most natural. What should have been in the court's mind first was expressed last, but this does not vitiate the instruction if the meaning at which we have arrived is the true one, and we think it was.

8. In silencing the defendant's counsel touching an irrelevant fact not in evidence, which was as to the object of confining the accused in Fulton county jail rather than that of DeKalb county, the presiding judge stated from his own knowledge what the object was, the confinement in that jail having been by the court's order. Undoubtedly this trivial matter is no cause for a new trial.

9. In charging the jury as to the form of their verdict, the presiding judge inadvertently omitted to say what form they should use in case they found the accused not guilty. On discovering the omission after the jury had retired to their room, he recalled them and supplied the omission with the proper instruction. This was correct.

None of the points or questions raised by the motion for a new trial, whether mentioned in this opinion or not, furnish any legal reason for trying the case over. The court did not err in refusing a new trial.

*Judgment affirmed.*