## HUGHES *v.* THE STATE.

1. The court did not err in overruling the demurrers general and special, filed by the petitioner.
2. The evidence submitted to the trial judge on the motion to set aside the verdict authorized a finding of facts as set out in the statement herewith by this court.
3. "Laws made for the preservation of public order, or good morals, can not be done away with or abrogated by any agreement; but a person may waive or renounce what the law has established in his favor, when he does not thereby injure others, or affect the public interest." Penal Code (1910), § 5. *Sarah* v. *State,* 28 *Ga.* 576 (2); *Barton* v. *State,* 67 *Ga.* 653 (44 Am. R. 743); *Robson* v. *State,* 83 *Ga.* 166 (7), 169 (9 S. E. 610); *Cawthon* v. *State,* 119 *Ga.* 395 (8, 9), 411 (46 S. E. 897); *Towns* v. *State,* 149 *Ga.* 613 (101 S. E. 678); *Denson* v. *State,* 150 *Ga.* 618 (4) (104 S. E. 780), and authorities therein cited.
4. Where a jury agreed on a verdict at night after the court had recessed until the next morning, and the defendant in a felony case, with full

knowledge of the facts, agreed that the verdict should be delivered to the court officer in charge of the jury, and that the jury should disperse, and that the verdict should be delivered into court the next morning with the jury reassembled, and where the agreement was fully executed and complied with in every detail, the defendant is bound by the waiver, and is estopped from attacking the validity of the verdict because of any of the irregularities to which she agreed. *Smith* v. *State,* 59 *Ga.* 513, 514 (27 Am. R. 393).

5. Moreover, where there has been no such waiver as held in the preceding headnote, a motion to set aside the verdict is not an available remedy. In this State the only available remedy is by a motion for a new trial. *Brown* v. *State,* 150 *Ga.* 585 (104 S. E. 428).

RUSSELL, C. J., dissenting. Where the judge presiding in the trial of a capital felony is sick and leaves the court-house of the county in which the trial is being conducted, and goes to his home in a different part of the city which is the county site, leaving the jury in the jury-room at the court-house, with no further instruction than to have the jury at court at 9 o'clock the following morning, a recess of the court in effect results which will not be terminated until the appointed hour or the earlier return of the judge to the court-house to resume the trial. As to matters affecting the trial itself the personal presence of the judge at the place fixed by law for holding court is absolutely essential, and no proceeding in the trial can be directed by telephonic communication. Consequently, even though counsel for both the State and the accused consented that the jury trying the case might deliver their verdict unsealed to a deputy sheriff of the court, and even though the defendant herself assented thereto, and thereupon the jury was dispersed, the purported verdict was void, and a motion to set the same aside, filed during the same term of the court, should have been granted.

No. 4244. FEBRUARY 20, 1925.

Murder. Before Judge Howard. Fulton superior court. February 23, 1924.

*R. R. Jackson,* for plaintiff in error.

*George M. Napier, attorney-general, John A. Boykin, solicitor-general, T. R. Gress, assistant attorney-general, E. A. Stephens,* and *R. H. Pharr,* contra.

PER CURIAM. Ida Hughes was tried and convicted of the offense of murder. After the trial had proceeded for two days, January 23 and 24, the jury retired to consider their verdict. Not having reached a conclusion for some time, the jury was sent to supper, and returned to the jury-room. Thereafter, the jury still having returned no verdict, there was a discussion between the court and counsel for the accused and for the State as to allowing the verdict to be delivered to deputy sheriff White, and allowing the jury to disperse whenever they should have agreed; but counsel differing,

no agreement was reached. The presiding judge was very unwell, and at about 8:30 o'clock left the court-house and went to his home, as did all the counsel in the case, leaving the jury in their room in charge of deputy sheriff White. Sometime between 9 and 9:30 o'clock the jury notified deputy sheriff White that they had reached a verdict, and this officer by telephone notified the judge and E. A. Stephens, representing the State, as well as Messrs. Wells and Allen, the attorneys for the accused, that the jury had agreed. His honor Judge Howard was at home sick; and Messrs. Wells and Allen, each of whom lived about eight miles from the court-house in different directions, were at their respective homes. Mr. Stephens, the assistant to the solicitor-general, had been selected to receive the verdict in behalf of the State, and soon appeared at the court-room. Mr. Stephens got in telephonic communication with the judge and with Messrs. Wells and Allen, and suggested to Mr. Wells that the jury hand their verdict to deputy sheriff White and be allowed to disperse until morning, when the verdict would be formally received, and was told by Mr. Wells to communicate with Mr. Allen and that he (Wells) would do whatever Mr. Allen preferred. Mr. Stephens then telephoned to Mr. Allen, who agreed to the suggestion, and upon communication with the presiding judge the latter gave his consent by telephone. The defendant, who was under guard of an officer in company with her codefendant, her husband, in a room adjoining the judge's chambers and the court-room, also gave her consent to the action proposed, upon the promise that she be told the result of the finding. In accordance with these stipulations Mr. Stephens, of counsel for the State, and deputy sheriff White went to the door of the jury-room, where the verdict was handed to the deputy sheriff, who in turn handed it to the State's counsel in order that "he might see if it was in proper form." The verdict was then read by State's counsel and Mr. Hughes; and the jury was discharged by the deputy sheriff, after being admonished to be in the court-room at 9 o'clock the following morning. The jury was brought into the court-room; the verdict was not received in court that night, only having been handed to the deputy sheriff to be kept until the next morning. The next morning, January 25, when the court met, the jurors were called into their box, and the question was asked whether the defendant desired to poll the jury, and her counsel replied in the negative. The

verdict finding the defendant guilty of murder was then read, and the defendant was sentenced by the presiding judge to be hanged on a day set forth in the judgment. The defendant, now plaintiff in error, on February 1, 1924, through different counsel from those who defended her, filed a petition to set aside the verdict and sentence of the court, upon various grounds. The only ground of the petition material to a decision in this case is that which attacks the verdict on the ground alleging that it was returned during a recess of the court and in the absence of the judge, and that the jury were permitted to disperse before the purported verdict was returned into court; it being urged that the verdict was a nullity. A hearing on the petition was had on February 9, 1924, when the respondent answered the petition. The petitioner demurred to the answer of the respondent, and moved to strike the same as insufficient. The trial judge overruled the demurrer, and thereafter denied the petition to set aside the judgment of the court. To the overruling of the demurrer and to the denial of her petition the plaintiff in error excepted.

The controlling rulings on this writ of error are stated in the headnotes.

*Judgment affirmed. All the Justices concur, except*

RUSSELL, C. J., dissenting. Upon the facts is presented the controlling question as to whether a verdict can be received and returned into court during a recess of the court. The petition to set aside the judgment alleges that after the court took a recess at about 8:30 o'clock on the night of January 24, 1924, the court presided over by the judge was not again in session or reconvened as a court in any capacity whatever until the following day, January 25, 1924, at 9 o'clock a. m. One undisputed fact is that his honor G. H. Howard, the judge presiding, was at his home more than a mile from the court-house during all of the negotiations as to the reception of the verdict in the case and at the time that the verdict was received, and that the counsel in the case were not in his presence to address him face to face, nor he in theirs, and that whatever direction may have been given by the judge was communicated by telephone by persons not in his sight or presence.

That there can be no court without a judge present to direct it is well settled. Can a judge by telephone effect a substitution for his personal presence? I think not. I am of the opinion that the

lower court erred in overruling the defendant's demurrers to the answer of the State, and in refusing to set aside the verdict. The fact that there was an offer to allow the defendant to poll the jury the next morning when the court reassembled is of no importance, because nothing is better settled than that after the dispersal of the jury the right of polling has passed; but even if this were not so, the offer to allow the defendant the right to poll the jury was made before the verdict was read, which was a tacit admission that the result of the verdict was already known, because unless this had been so it is not only universal practice to poll the jury after the verdict is read but in fact any other course would be impossible if the verdict is legally returned. Of all things most sacred in judicial proceedings the sanctity of a verdict should be most inviolate. The finding of the jury should not only be reached by the strictest observance of all the well-ordered rules of procedure but it should even be above and beyond suspicion. This has uniformly been the rule of all the courts, even where mere property is concerned; and certainly the rule should not be relaxed when human life is at stake. In Silvey v. State, 71 Ga. 553, it was held that where a jury charged with a criminal case had dispersed, the burden was on the State to show that the accused had sustained no injury thereby, and that the fact that "before dispersing, the jury agreed upon a verdict, reduced it to writing and left it with their foreman, did not show that the accused was not injured. Such a writing was not a verdict, but was a mere resolution, which it was in the power of the jury to alter or change at any time before it was delivered into court." In this case Mr. Justice Blandford said: "The right of trial by jury is one of the dearest and most sacred rights of freemen, and courts can not guard it with too much jealousy. The jury should not only be free from fault, but the appearance of evil should be avoided." See also Monroe v. State, 5 Ga. 85, 150; Roberts v. State, 14 Ga. 8, 15 (58 Am. D. 528); Westmoreland v. State, 45 Ga. 225; Jones v. State, 68 Ga. 760. It is well settled, then, that a jury can not disperse without the consent and knowledge of the court and under his supervision; and so the question recurs, can a court sit at home instead of at the courthouse, and give direction and supervision to so critical and important a part of the trial as the reception of the verdict in a capital case? Included in the bill of exceptions is a certificate

of the trial judge, from which I quote, on the point of the absence of the judge. "After the jury had been charged and had deliberated until about 9 o'clock p. m., . . being sick at the time, I notified the deputy sheriff, Mr. White, I was sick, and made the statement to him . . to the effect that I would go home, and to bring the jury in the next morning at 9 o'clock if they made a verdict during the night. I don't recall telling him to take the jury to the hotel, though he had been instructed the day before to provide quarters at the hotel, and I knew he would do so and would not keep them in the jury room all night. . . When I arrived at home, in about fifteen minutes the deputy sheriff telephoned me that the jury had notified him that a verdict had been reached within about five minutes after I left the court-room. I told him I was quite sick but would return to the court-room if he would notify the defendant's attorneys or get them or Mr. Allen there; otherwise I would come down next morning. Later Mr. Stephens, assistant solicitor-general, telephoned me that an agreement had been reached between the defendant and her counsel and himself to deliver the verdict to the deputy sheriff and to waive the call and poll of the jury and permit the jury to disperse until court convened the next morning." It will be noticed that the certificate of the trial judge does not state that he gave his consent in terms to the agreement between Mr. Stephens, representing the State, and Mr. Allen, representing the defendant. The judge also certifies the truth of a part of the affidavit of G. F. Wells, which is as follows: "Deponent further says that he heard a conversation in regard to the reception of the verdict in said case, that transpired between the court officials, the lawyers, and the judge; . . that during said conversation he heard his honor, G. H. Howard, the judge in said case, say, 'I am sick. I am going home. Bring the jury here in the morning at 9 o'clock a. m., and we will receive the verdict at that time if they have reached one.' "

The findings of juries have frequently been set aside for occurrences in the absence of the defendant (*Chance* v. *State,* 156 *Ga.* 428, 119 S. E. 303) ; but this case differs from these adjudications in that it is the absence of the judge, and not the defendant, of which complaint is made. It would seem to be a sound principle that a gathering large or small, even at the appointed time and place, has no jurisdiction to try any case, civil or criminal, great or

small, and to be entitled to the denomination of a court, in the absence of a duly qualified judge. Can a constructive presence be created by telephone which may be substituted for what must be conceded as a paramount essential of a trial, which will be the equivalent of the actual presence in propria persona of a duly qualified judge? In *Carnes* v. *Carnes,* 138 *Ga.* 1, 6 (74 S. E. 785), it was held that a telephonic affidavit would not supply the place of an affidavit in person, to support an application for the writ of ne exeat; the court saying: "Telephonic affidavits are unknown to the law. A moment's thought will show a sound reason for this. An officer hears a voice coming through the receiver of a telephone. For identification he must rely on recognition of the voice (if he knows it) and the statement of the person as to who he or she is. Reference is made to some paper, more or less fully described. Later a third person presents to the notary a paper as being the one sworn to. How does the notary know, except by hearsay, that the paper presented is the identical paper mentioned?" In *Horne* v. *Rogers,* 110 *Ga.* 362, 370 (35 S. E. 715, 49 L. R. A. 176), it was said: "The judge is such a necessary part of the court that his absence destroys the existence of the tribunal, and public policy demands that the tribunal authorized to pass upon the life, liberty, and property of the citizen should be constituted during the entire trial in the manner prescribed by law. The great weight of authority is in harmony with this view. The very definition of trial carries with it the idea of the superintendence of a judge." In Turbeville *v.* State, 56 Miss. 793, the court said: "There can be no court without a judge, and his presence, as the presiding genius of the trial, is as essential during the argument as at any other time." In Capital Traction Co. *v.* Hof, 174 U. S. 1, 13 (19 Sup. Ct. 580, 43 L. ed. 873), Mr. Justice Gray, delivering the opinion of the court, says: "A trial by a jury of twelve men, in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and (except on acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law or the evidence." Numerous authorities could be cited to sustain the proposition that a legal trial can not be had except when the judge is present at all stages of the proceeding, and that in the absence of the judge the case is suspended and a recess should be taken, which, as it appears from the

certificate of the judge, was the expressed intention of trial judge while on the bench and before he left for his home in the case at bar,—a recess until 9 o'clock a. m. on January 25, 1924.

Among others which might be referred to are the cases of People v. Eckert, 16 Cal. 111; Shaw v. People, 3 Hun, 272; People v. Shaw, 63 N. Y. App. 38; Palin v. State, 38 Neb. 862 (57 N. W. 743); Meredith v. People, 84 Ill. 479; State v. Smith, 49 Conn. 376; Blend v. People, 41 N. Y. App. 604; Hayes v. State, 58 Ga. 35. In Rodgers v. Price, 105 Ga. 67 (31 S. E. 126), Mr. Justice Lewis said: "The solution of the question raised by the assignment of error in this record depends upon what construction should be given the word 'court' as used in section 4793 of the Civil Code. Sometimes this word, as applied to a particular branch of the judiciary, is used in its comprehensive sense, and embraces all of the official machinery of a particular court, including judge and jury, if a jury should be one of its tribunals in determining issues. But we have never known the word applied so as to designate a jury alone. Where the term is used in the statute that is intended to designate what official shall determine and pass upon certain issues in the court, it invariably means the presiding judge. Whenever it is the legislative intent that the issues in any proceeding should be submitted to a jury, the word 'jury' is used, and not 'court.' " There is a distinction between the meaning of the words "court" and "judge." The term "judge" may designate the individual who holds that office, but the word "court" relates to all the machinery provided by law, including the judge, or the judge acting alone when performing his functions at the place fixed by law for the trial under consideration. Hence it was held, in Stewart v. Crane, 87 Ga. 328 (13 S..E. 552), that "While it may be true that a court of equity is always open, and that the judge accordingly may, at chambers, pass all proper orders in an equity cause, we are of the opinion that the language of section 4203 of the code restricts the authority of the court as to master's reports to such things only as may be done in term time. The section provides that the master's report, 'when returned to court, shall be subject to exceptions for such time as the court may allow.' The word 'court,' as first above used, evidently can not mean the judge." From the foregoing authorities I am of the opinion that when the trial judge in open court told the deputy sheriff, "I am sick. I

am going home. Bring the jury here in the morning at 9:00 o'clock a. m.," etc., and left the court-house and went to his home, all judicial authority and power was lost over the person of the plaintiff in error and of the subject-matter at issue upon her trial until the time designated by the judge as judge at the court-house. After the judge had gone to his home the defendant could not have pleaded guilty had she so desired, and by reason of his absence she could no more waive her right as to the poll of the jury during that absence than she could enter a plea of guilty. The plaintiff in error had the right to have her case tried in a court of competent jurisdiction with a judge presiding and present at every stage of the trial. As held in *Lamar* v. *Prosser*, 121 *Ga.* 153 (48 S. E. 977), "'Due process of law,' as required by the fourteenth amendment to the constitution of the United States, means only that a man is to be tried, as every other man is tried, in accordance with the law of the land in the State where he is charged with crime." This case presents features so unusual that it can not be said that the plaintiff in error has been tried as others are tried. See *Hoye* v. *State,* 39 *Ga.* 718, 724.

It appears from the record that the only direction given by the presiding judge while personally present and presiding at the court-house was to keep the jury together and bring them into court at 9 o'clock the following morning, and that any agreement made by the judge as to the reception of the verdict and the dispersal of the jury was made during his absence; and for this reason the separation and dispersal of the jury was improper. For this reason the trial did not reach a conclusion by the orderly procedure to which each one charged with crime is entitled. The trial had not ended; and where life and liberty are involved, the jury should be kept together from the commencement of the trial to its final termination and the return of their verdict into court. If there can be no court in the absence of the judge, regardless of any waiver, the verdict was received and the jury dispersed before the trial had ended. "The right to poll the jury is the right to call upon each member to answer whether the verdict rendered is his verdict, before he has had an opportunity to be influenced either to adhere to or depart from the finding. This right is lost as soon as the jury have dispersed and cease to be a jury and the individuals become again simply members of the community." *Prescott* v.

*Augusta,* 118 *Ga.* 549 (45 S. E. 431). It has been held that the giving of a recharge to a jury in the absence of the accused is cause for a new trial, even though counsel for the accused are present and remain silent. *Bonner* v. *State,* 67 *Ga.* 510. See also *Hopson* v. *State,* 116 *Ga.* 90 (42 S. E. 412), where a new trial was granted because the judge recalled the jury for an additional charge, even though the charge was the same in substance as the original charge. If it be said that counsel for the plaintiff in error were anxious that the verdict should be returned and the jury allowed to disperse until the next morning, it must be remembered that the authority to bind their client, conferred upon them by § 4955 of the Civil Code, is confined to written agreements; the language of that section, so far as material, being, "They have authority to bind their clients in any action or proceeding, by any agreement in relation to the cause, made in writing," and certainly agreements by telephone. as is the case in the present instance, would not bind the plaintiff in error. An oral agreement made by counsel in the presence of the court in session may be enforced; but for reasons heretofore stated, a telephonic conversation is not the equivalent of a statement in judicio. That the agreement that the jury hand the verdict to the deputy sheriff and be permitted to disperse, being oral, can not be enforced, see *Huff* v. *State,* 29 *Ga.* 424; *Cable Co.* v. *Parantha,* 118 *Ga.* 913 (45 S. E. 787); Evans *v.* State National Bank, 19 Fed. 676. We are aware of the numerous rulings of this court holding the extent to which waivers by defendants are operative. It is only necessary to say that those rulings were based upon waivers of rights by the defendants in the presence of the court, and not under the circumstances which surrounded the alleged waiver in this case.

The defendant in error insists that the verdict and judgment should have been attacked only by motion for new trial, and submits this as a reason why the court did not err in refusing the prayer of the petition. Conceding, for argument's sake, that the receiving of the verdict and dispersal of the jury under the circumstances of this case might have been taken advantage of by motion for a new trial, it is certainly not the exclusive mode of procedure. The right to proceed to set aside a verdict alleged to be void has always been recognized in this State, and has been employed in many cases. There may have been good and sufficient reasons why the counsel first employed did not wish to raise the issue presented by the

present bill of exceptions. But be that as it may, this court will not undertake to decide questions raised for the first time in this court, preferring to review in each instance the case as it was actually tried in the lower court. If the present insistence of the defendant in error is meritorious, that point could have been raised by a timely demurrer to the petition, but none was presented.

The court erred in not setting aside the verdict and judgment.