## MALCOM BROTHERS *v.* POLLOCK.

688

No. 11085. JANUARY 18, 1936. REHEARING DENIED FEBRUARY 21, 1936.

*John B. Gamble, Preston M. Almand, C. W. Peebles, Wolver M. Smith,* for plaintiffs in error.

*E. W. Roberts,* contra.

GILBERT, Justice. The two questions shown in the headnote involve the same principles of law, and they may be answered together. The briefs of counsel so treat them. In the brief of the plaintiff in error, however, references are made to parts of the record for the purpose of explaining and enlarging the statement of facts contained in the questions. As repeatedly ruled, this court is limited to the questions as propounded by the Court of Appeals. If, in addition to the facts included in the questions, this court should consider other facts called to its attention by counsel, that would obviously result in this court answering questions not really propounded and not desired by the Court of Appeals. If counsel feel that the questions are not fairly appropriate to the issues pending in the Court of Appeals, the matter can be called to the attention of that court, and without doubt careful and necessary attention will be given thereto. The authorities cited by the Court of Appeals have been examined, but none is decisive of the questions presented. Neither question calls for the application of a principle of substantive law as to the return of the verdict, but involves, properly speaking, a rule of expediency. This was the view of the court in *Merchants Bank of Macon* v. *Rawls, 7 Ga.* 191, 200 (50 Am. D. 394), where it was said: "The rule on this subject is more one of expediency than of principle." Similar language was used in *Hugley* v. *Holstein, 34 Ga.* 572, 574, as follows: "The question in this case is one of practice; and the rule to be established, one rather of expediency than of principle." It

is not shown in the propounded questions that the agreement of counsel required the verdict to be formally delivered in open court. The agreement was that it was to be "returned" to the sheriff. Obviously the duty of the sheriff would be to deliver the verdict to the clerk of the court the next morning, in the absence of other agreement or specific instructions from the judge. It is to be presumed that the sheriff did his duty. This course of action is authorized under the Code of 1933, § 110-107, which provides: "Verdicts shall be received only in open court, in the absence of agreement of the parties." This section is specific authority for receiving verdicts, by agreement, otherwise than in open court. The first question must therefore be answered in the negative, unless we shall hold that the other condition, viz., that it was returned "in the absence of the trial judge from the county, and never received in open court or other than as here indicated," requires us to reach a different conclusion. The effect of the latter condition will be determined while considering at the same time the condition named in the latter part of the second question, viz., "after the judge left and went to his home in another county," followed by the query if "during his absence there was no valid or legally existing court and all the proceedings during his absence were nullities."

In several cases this court has critized the action of the judge in temporarily absenting himself from the court-room during the trial of a case without suspending the trial. The action was in each case, however, treated as an irregularity not requiring the grant of a new trial. The main cases discussed by counsel for the plaintiff in error, from which it is urged that this court should now hold that the absence of the trial judge from the court-room is a ground for granting a motion for a new trial, will now be considered. They are: *O'Shields* v. *State,* 81 *Ga.* 301 (6 S. E. 426) ; *Pritchett* v. *State,* 92 *Ga.* 65 (18 S. E. 536) ; *Horne* v. *Rogers,* 110 *Ga.* 362 (35 S. E. 715, 49 L. R. A. 176) ; *Martin* v. *State,* 10 *Ga. App.* 455 (73 S. E. 686). In the *Horne* case Mr. Justice Cobb, speaking for the court, entered into an elaborate consideration of the question. He stated, however, that the only decisions in point and discussed by him were those of *Hayes* v. *State,* 58 *Ga.* 35, and the *O'Shields* and *Pritchett* cases, supra. He explained that in the *Hayes* case a new trial was ordered, but not solely on account of the absence of the judge during the

examination of witnesses. Obviously, as recognized by Mr. Justice Cobb, that case is not a binding precedent. What was there said is obiter as applied to this case. In discussing the *O'Shields* and *Pritchett* cases he very properly emphasized the importance and desirability of the presence of the judge at the trial, in all of which discussion we readily concur. But he added: "If it were an open question, we would hold that the presence of the judge at all stages of the trial is absolutely necessary," etc. That declaration is not binding upon this court. It may be opportune to point out at this juncture that in the *O'Shields* and *Pritchett* cases the circumstances of the judge's absence were quite different from those suggested in the propounded questions. In each of these cases, the absence of the judge was during the argument of counsel, the jury being in the box and needing the presence and protection of the judge against any improprieties or unlawful acts of counsel or spectators. This was true also in the *Horne* case, supra, in which Justice Cobb wrote the opinion. From the propounded questions it is clear that in the instant case all testimony and arguments were at an end, and that the judge absented himself from the court-room only after the jury had retired to consider the case. It is a legal presumption that the jury was under the protection of a deputy sheriff as required by law, and thus removed from any influence that might, though unlawful, be possibly exerted in a court-room, and which the presence of the judge was needed to discountenance and avert, suppress when attempted, or properly condemn if in fact exerted. Under modern convenience of communication and transportation, the judge in the case in question, though physically absent, was able to respond without unreasonable delay, if his presence were actually needed while the jury was deliberating. Indeed it may now be possible for a judge, when summoned by telephone, to journey by automobile from a county adjoining that from which he absented himself, in less time than would have been required, when the older cases were decided, for the judge to reach the court-room from his home. Nor would it necessarily be an exaggeration to assert that the same contrast exists between the circumstances of the present day and those of the time in which Justice Cobb's opinion was written, viz., in 1900. What we here point out is that, in a matter of expediency, the gravamen is not so much the technical fact of absence per se, but rather the supposed

inaccessibility of the judge because of his absence, and that this inaccessibility, which might have been imputed under old conditions, does not in fact exist to-day.

In the *Horne* case Justice Cobb  further stated: "Until the present case, the three cases cited are all that are to be found in our reports relating to this question, and from these we deduce the rule applicable in such cases to be: The mere absence of the judge during the progress of the trial, when no objection is made, will not necessarily require the granting of a new trial, when the absence is only for a few moments and for a necessary purpose; and in order for such absence to become reversible error, it must appear not only that objection was made to the judge's failure to suspend the trial, but that the absence of the judge resulted in some harm to the losing party. In obedience to this rule, we are constrained to affirm the judgment in this case." Then follows the declaration referred to hereinbefore, as to the court's disposition to hold otherwise but for the binding authority of the *O'Shields* and *Pritchett* cases, which declaration by Mr. Justice Cobb, as we have stated, constitutes no obligation upon this court. To the changed conditions mentioned in the foregoing part of this opinion this court can not shut its eyes, and it can not say that a proper construction of the rule, as deduced from the other cases by Mr. Justice Cobb, will not permit of a similar holding here, that the absence of the judge in an adjoining county under the circumstances named in the propounded questions will not, as in the case of absence "only for a few moments," authorize the grant of a motion for a new trial. In *Martin* v. *State,* supra, decided in 1911, the court said: "It must be admitted that any absence of the presiding judge when the trial is going on is an irregularity; and if the question were an open one, we should hold that any absence of the judge, no matter how brief, necessarily suspends a pending judicial proceeding. But, under rulings of the Supreme Court, there are occasions when a temporary absence of the judge, even though the trial is in active progress and the jury has not retired, can not be said to be harmful to either party. . . In the present case, however, the judge went beyond the jurisdiction of the court in which the trial was pending. The jurors could not be said to have been even constructively in his presence, and the presence of the judge was indispensable to the legality of the court. If there is no judge,

there is no court." What was there said as to the disposition of the court to hold otherwise, but for the *O'Shields* and *Pritchett* cases, cited in that opinion, is not binding on this court. Attention was called to the fact that the judge left the proceedings and went to another county, and in a court therein granted a charter. That case also was decided at a time when automotive transportation and highways did not provide that celerity of travel which now obtains. This latter condition must be borne in mind when properly construing the further remark of the court that "Where the judge is within call of the jury and physically absent, but at a place *so near by that he can easily return if needed,* he may be presumed to be constructively present at the court-house; but this presumption can not be indulged when the judge goes to a place beyond the jurisdiction of the court in which the trial is being had." (Italics ours.) Theoretically, it might be contended that the judge should be in court while the jury deliberates in seclusion, and until they return the verdict into the court-room, however long delayed; but, as a matter of practice and expediency, the ends of justice and equality of right and privilege between the parties are perfectly attained by treating as valid a return of the verdict under the circumstances named in the two propounded questions.

We must, or course, bear in mind that the first and fundamental object to be attained is the administration of justice pure and undefiled. Neither effort nor expense must be considered in order to protect that pure stream from pollution by outside interference and influence. Better that many verdicts be set aside and the work be done again than to administer that which is not justice. On the other hand, there is about as much danger of perverting justice in the setting aside of verdicts as against a bare conjecture or possibility of contamination. After a verdict has been reached by a jury the losing party almost invariably overestimates and exaggerates that which he assumes to be harmful. Verdicts which speak the truth and are supported by the law and the evidence should not be set aside except for a good reason. Trial courts should not be held to rules so strict and difficult that injustice may follow. To illustrate by local conditions familiar to all of us, it is not difficult to conceive that a judge of the superior court of Fulton County might reside near the extreme end of the county.

In traveling to and from the court-house it might be necessary or convenient or time-saving to travel a route which might incidentally cross another county line. For example, suppose the judge should reside in Fairburn or Palmetto, and in traveling the most direct route should cross Fulton and Clayton county lines. If in such a case he had left a jury under circumstances like those set out in the questions propounded to this court, and the jury arrived at a verdict, should it be for that reason set aside even if the jury were kept together until the following day and the verdict returned in open court? According to such a rule, if the judge should pass through a short stretch of Clayton County while a case was being considered by a jury, or a verdict agreed upon and being in the hands of the jury, the court would be automatically dissolved and everything rendered nugatory. Again, suppose the judge should be residing at Bolton near the county line, or in Druid Hills near another portion of the line, and while the jury was deliberating at night the judge should leave his home and cross the line for any purpose, under the argument presented the court would be automatically dissolved. Another illustration will show the undesirability of laying down too stringent a rule as to the presence of the judge at the court-house. It is the practice in Fulton County that the judge of the Stone Mountain Circuit preside in the superior court of Fulton County on occasions when necessary to reduce the number of accumulated cases. Assuming that such judge resides in DeKalb County, which is a part of his circuit, he would be unable to return to his home at night in case he were engaged in holding court in Atlanta and a jury were still being held for the purpose of reaching a verdict. These are somewhat extreme instances; but the rule must be laid down as applicable to all possible contingencies. This court in the early cases above mentioned referred to these rules as expediencies, and we think that is a proper designation. It would be exceedingly inexpedient to lay down rules so difficult or so easily transgressed inadvertently as seriously to impair the administration of justice. These illustrations afford another reason why the answer to the propounded questions should be in the negative. The request of counsel for the plaintiff in error that we overrule the *O'Shields* and *Pritchett* cases is denied; and both of the certified questions are answered in the negative.

*All the Justices concur; except Russell, C. J., and Atkinson, J., who dissent.*

RUSSELL, Chief Justice, dissenting. Both the questions propounded by the Court of Appeals should be answered in the affirmative. The instructions given by this court must be strictly confined to the question propounded (*Georgian Co.* v. *Jones*, 154 *Ga.* 762, 115 S. E. 490), but this does not preclude a consideration of the meaning of the words employed by the Court of Appeals. It appears from the questions that "after the jury has [had] taken the case under advisement and before the jury [rendered] a verdict," the judge directed "in open court" etc. From this portion of the question it is plain that the jury did not hear the direction, because they were doubtless in the jury-room, under the statements made by the Court of Appeals, and in the absence of the statement that they were called into the room to hear the directions of the court, it must be presumed that at the time the judge gave the directions which are referred to in both questions the jury were without the hearing of the court. Furthermore, the direction of the court "that when a verdict is made it shall be sealed and 'returned' to the sheriff" is not stated to have been agreed to by counsel for both sides; but the words used by the Court of Appeals are "with the consent of counsel for both sides." The statute applicable to the subject (Code of 1933, § 110-107) is as follows: "Verdicts shall be received only in open court, in the absence of agreement of the parties." We are sure that the Court of Appeals is well aware of the fact that the word "consent" is not a perfect synonym of the word "agree." The word "agree" implies discussion or opportunity to discuss a proposition. "Consent" merely implies that no opposition was interposed to a proposition. The proposition need not have originated with either of the parties to the case. It next appears from the question that the "verdict afterward rendered by the jury and 'returned' to the sheriff in the absence of the trial judge from the county," was "never received in open court or other than as here indicated." From this fact as determined by the Court of Appeals it must necessarily be inferred that the court did not return to Walton County to receive the verdict returned to the sheriff, who was without any power to communicate with the jury, to instruct them should they need any further instruction upon the law, or even to poll them.

To answer the question in the langauge of the second request for instructions, "there was no valid or legally existing court, and all the proceedings during his absence were nullities." No ruling of this court can be found that a court is legally constituted after the judge absents himself from the county while the jury is. deliberating on their verdict and never returns to the county to receive the verdict, even though the judge may have departed from the county without counsel for either party having interposed objection. Section 110-107 was never intended to place the judge in the position of obtaining, even by intimation, the consent of counsel to his absence from the court when he should be present.

And even if the consent be granted, it can not confer jurisdiction which is not conferred by law. No maxim of the law is more familiar than *coram non judice,* which may be translated liberally as no court without a judge. Counsel can not by consent or failure to object authorize the judge to absent himself from the county in which he is holding court, any more than counsel could by consent have the trial in a county different from that which alone had jurisdiction of the parties and subject-matter of a suit. Counsel can not by consent, or even by agreement, dispense with the judge and procure twelve men to sit as jurors and try a case and render a verdict. Under a proper construction of the question, there was no agreement in this case that the verdict was not to be received in open court. It was to be "returned" to the sheriff. From this part of the question it can only be inferred that it was not to be published until the judge returned to his court-room and was himself present at the publication of the verdict. Many times papers containing a verdict have been temporarily placed in the hands of the clerk on agreement of counsel to be held until the judge returned to the court-room, to be then received and read to the court. But there is one great difference at least between the offices of sheriff and clerk. The sheriff is the executive subordinate to the court, while the clerk is the ministerial officer who keeps the records. The writer is bound by his oath, in rendering decision on the questions now before us, to adhere to the views herein expressed, that a court can not, under the constitution and laws of Georgia, be legally constituted unless the judge, who is the genius of the court, is at all times, and until the conclusion of the trial, physically accessible to the jury. *Martin* v. *State,* 10

*Ga. App.* 455 (supra). In that case I expressed the unanimous opinion of the Court of Appeals. In *Hughes* v. *State,* 159 *Ga.* 818 (127 S. E. 109), I reiterated the views expressed in the *Martin* case. In the *Hughes* case the judge was accessible by telephone, and counsel agreed that the verdict be received.

The effect of the absence of the judge from the court-room during the pendency of a trial has been considered in several cases by this court, but in none of them did the judge go beyond the limits of the county in which the trial was being conducted. In *Horne* v. *Rogers,* 110 *Ga.* 362 (supra), Mr. Justice Cobb, delivering the opinion of the court, stated that in *Hayes* v. *State,* 58 *Ga.* 35, *O'Shields* v. *State,* 81 *Ga.* 301, and *Pritchett* v. *State,* 92 *Ga.* 65 (supra), are to be found the only rulings on the effect of the judge's absence from the court-room during the trial. He reviewed them and deduced the rule applicable to such cases to be: The mere absence of the judge during the progress of the trial, when no objection is made, will not necessarily require the granting of a new trial, when the absence is only for a few moments and for a necessary purpose; and in order for such absence to become reversible error, it must appear not only that objection was made to the judge's failure to suspend the trial, but that the absence of the judge resulted in some harm to the losing party. But the fifth headnote in the *Horne* case is in these words: "The absence of the judge from the court-room for a brief space of time while the trial is in progress will not, in a case where the evidence demanded the verdict as rendered, be, in the light of the former rulings of this court, a sufficient reason to reverse the judgment, when such absence was known to counsel, and there was no request to suspend the trial, no objection to the absence, and no motion for a mistrial upon the judge's return. The rulings in *O'Shields* v. *State,* . . and *Pritchett* v. *State* [supra], criticised and disapproved; but, in the absence of an application to review the same, they are followed in the present case." Special notice is called to the concluding statement, that no application to review the *O'Shields* and *Pritchett* cases had been made, and there is more than a mere implication that had a motion to review these cases been made they would have been overruled. In the case at bar counsel has made application for the review and overruling of these cases; and it is my opinion that this application should be

granted. Not only is this true, but the decision in the *Horne* case, so far as the question now before us is concerned, is distinguished from the latter in that the court expressly stated that the evidence demanded the verdict as rendered, which does not appear in the present instance from the facts stated by the Court of Appeals in its questions. I have always adopted as my view on this subject that portion of the opinion in the *Horne* case, that we should "hold that the presence of the judge at all stages of the trial is absolutely necessary to its validity, and that the absence of the judge from the trial without suspending the same, for any length of time no matter how short, or for any purpose no matter how urgent, would vitiate the whole proceeding, whether objection was made by the parties interested or not, and whether injury resulted to any one or not. The judge is such a necessary part of the court that his absence destroys the existence of the tribunal, and public policy demands that the tribunal authorized to pass upon the life, liberty, and property of the citizens should be constituted during the entire trial in the manner prescribed by law. The great weight of authority is in harmony with this view. The very definition of trial carries with it the idea of the superintendence of a judge." There is nothing in the *O'Shields* and *Pritchett* cases akin to the essential facts appearing in the questions of the Court of Appeals, which would require that the ruling in the *O'Shields* and *Pritchett* cases should be so extended as to include the circumstances of the question.

2. Furthermore, it appears from the second question that the judge did not return to the county, after the verdict, to enter judgment upon it; and it must be inferred that the judgment was entered "in another county" than Walton, where the action was pending. In my opinion, for the reasons stated, the verdict is void; but if the verdict were good, the judgment entered on the verdict is void, as held in the opinion of six Justices of this court, which so far as I am aware has never been criticised nor overruled. In *Commissioners of Thomas County* v. *Hopkins*, 119 *Ga.* 909 (47 S. E. 319), it was held that "A judge of the superior court has no jurisdiction at chambers and in vacation to render a final judgment upon a verdict previously rendered at a regular term of the court." In delivering the opinion Mr. Chief Justice Simmons said: "The rendition of a judgment is a judicial act, and must

be performed in term; and a judgment rendered in vacation, in the absence of authority to do so, is absolutely void. 1 Black on Judg. (2d ed) § 179. The verdict of the jury in the present case was returned during a regular term of the court [received 'by consent,' as contended by the majority of the court], and there is no law in this State authorizing the rendition of a judgment in such a case in vacation. The judgment rendered was therefore a nullity, and must be disregarded."

ATKINSON, Justice, dissenting. Under a proper construction, the questions propounded by the Court of Appeals contemplate solely the delivery of the verdict to the sheriff—not delivered to the court and published by the court. A verdict so delivered to the sheriff, but not delivered by him to the court, would, under all the circumstances stated in the question propounded by the Court of Appeals and on the principles stated in the dissenting opinion of Mr. Chief Justice Russell, be void. If the questions propounded had contemplated delivery of the verdict to the court and its acceptance and publication by the court, the verdict, on the principles stated in the majority opinion, would not be void.