### 45486.   SMITH et al. v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al.

EBERHARDT, Judge. Jackie P. Smith, a State Patrol Officer, and his wife filed complaints in Douglas Superior Court against James R. Walton, Nina Ann Boyd Walton, and Philip Glover, seeking to recover damages resulting from an automobile collision in which Smith was injured. It was alleged that Smith, operating a State Patrol automobile in the performance of his duties, was in pursuit of a 1966 Chevrolet Corvair being driven by James Walton at a speed of 80 m.p.h. at the direction of and under the control of Nina Walton (then Nina Boyd), the

owner of the fleeing vehicle; and that the Walton vehicle forced the Glover vehicle off the road and out of control, whereupon Glover came back upon the roadway in such manner as to collide with Smith. Glover filed a counterclaim against Smith and a cross claim against the Waltons, seeking to recover for his injuries.

State Farm Mutual Automobile Insurance Company, which had been served in the Douglas County damage actions, then brought the present complaint against Georgia Farm Bureau Mutual Insurance Company and the Smiths in the Superior Court of Carroll County, the county of residence of the Smiths, seeking a declaratory judgment that it had no liability under the uninsured motorist coverage of the policy it had issued to Smith. This liability, insisted upon by Smith, was sought to be evaded on the grounds that the Smiths had not given written notice of the collision as required by the policy, and that Georgia Farm, which was not a party to the Douglas County damage actions, afforded liability insurance to the Waltons so that State Farm's uninsured motorist coverage would not come into play. Liability coverage for Glover's counterclaim against Smith, which Smith demanded that State Farm defend, was also sought to be evaded upon the ground that the policy afforded no liability coverage for the State Patrol vehicle, and that Smith had not reported the collision to State Farm. Georgia Farm asserted several grounds to support its position that it afforded no coverage to the Waltons.

Both insurance companies made motions for summary judgment. The trial court ruled that Georgia Farm's Policy afforded no liability coverage to the Waltons, and that State Farm was not liable to the Smiths under the uninsured motorist coverage. The Smiths appeal. *Held:*

1. The Smiths argue in their brief that the Superior Court of Douglas County would have been a better forum in which to bring the declaratory judgment proceeding since the damage actions were pending there. While forum shopping in declaratory judgment proceedings is not favored where the same legal issues are determinable in another proceeding then in progress between the same parties in a court having jurisdiction thereof,

Georgia Farm is not a party to the damage actions and the question of its coverage is not in issue there. Suits for declaratory judgment by an automobile insurance carrier seeking to determine questions of coverage with respect to pending tort actions have been approved in numerous instances by the Supreme Court (see, e.g., *Mensinger v. Standard Acc. Ins. Co.,* 202 Ga. 258 (42 SE2d 628); *St. Paul Fire &c. Ins. Co. v. Johnson,* 216 Ga. 437 (117 SE2d 459); *Strickland v. Georgia Cas. & Sur. Co.,* 224 Ga. 487 (162 SE2d 421)), and in countless others by this court (see, e.g., *Ditmyer v. American Liab. Ins. Co.,* 117 Ga. App. 512 (160 SE2d 844) and cases cited), and no reason appears why the present suit is not maintainable.

2. The only issue submitted for our determination, and the only one with which we deal, is whether exclusion (K) of Georgia Farm's liability policy is applicable under the evidence in the record. State Farm argues only that it has no obligation to the Smiths under its uninsured motorist coverage because Georgia Farm afforded liability coverage to the Waltons as a matter of law, and thus the Corvair was not an uninsured automobile. Consequently, if exclusion (K) of Georgia Farm's policy is applicable, State Farm's summary judgment must be reversed.

The exclusion of Georgia Farm's policy[1] in question provides that the liability coverage "does not apply . . . to bodily injury . . . arising from or caused by any insured's attempt to . . . resist arrest or flee from justice. . ." The record indicates generally that the pursuit of the Walton Corvair began when Smith witnessed Walton fail to obey a stop sign on Maroney Mill Road at its intersection with Highway 92 in Douglas County. The Corvair headed north on Highway 92 and Smith, who had entered Maroney Mill Road from the highway, turned around and began following it, whereupon the Corvair turned left down a dirt road. Smith continued following, and the Corvair proceeded along the dirt road in a circle for a distance of four or five

---

[1]Georgia Farm asserted that no policy was ever issued, and material issues of fact presumably remain as to this defense. However, there is no dispute that if one was issued, it would contain the exclusionary clause under consideration.

miles back to Highway 92 and Maroney Mill Road. The Corvair crossed the highway back into Maroney Mill Road, then turned left onto Gresham Road, and the collision between the pursuing patrolman and Glover occurred approximately three-fourths of a mile down this road.

Nina Boyd Walton stated in her deposition that James Walton, the driver of her automobile, was absent without leave from the Armed Services; that she saw the patrolman behind them after they had gone a short distance down the dirt road; that Walton began speeding on the dirt road after turning off the paved road; that her automobile was stirring up a lot of dust, but that she could see through the dust enough to look back two or three times and see the patrolman in pursuit; that based on his manner of driving, she thought Walton knew the patrolman was behind them, and that he was trying to get away from him; that she was frightened at Walton's manner of driving, and probably told him the patrolman was following and to slow down; that they were gaining on the patrolman, and he wasn't in sight at the time of the collision.

Walton, in his affidavit, stated that "I was in the military service of the United States and was absent without leave. As I approached Maroney Mill Road and Highway 92 in Douglas County, I saw a Georgia highway patrolman turn into Maroney Mill Road. While I knew most of the officers of the Georgia highway patrol in the Douglas County area, I did not know this officer but thought he might have recognized me. After seeing the highway patrolman, I turned onto Highway 92, and drove at a speed in excess of 60 and not more than 80 miles an hour, knowing that the highway patrolman was following me. I was driving my automobile at this high speed in hopes and in an effort to lose or evade him in order that I would not be arrested for speeding or for being absent without leave. I knew that the patrolman was chasing me on Highway 92 in an effort to stop me but about two miles down Highway 92, I turned off onto a dirt road and never did see the patrolman's car again. There was a great deal of dust on the dirt road which I believe would have obscured any car following me. I specifically intended, while on Highway 92, to evade and escape from the State patrol officer who I knew was pursuing me."

In answer to interrogatories Officer Smith stated that the Corvair failed to stop at the stop sign; that as he was "pulling up" on it "they speeded up to approximately 75 miles per hour, then skidded several feet turning left on a dirt road, almost turning over. They almost hit a bridge crossing a small creek. Further on down this county road, they skidded sideways in front of me almost causing an accident. I had pulled on my revolving red light as we turned off on this dirt road and thought after they almost wrecked the second time they were going to stop. I was almost stopped when they straightened out from this skid and they spun off again, slinging gravel all over my windshield. I gave chase again and was almost up to them when we got back to where this dirt road crosses Highway 92 and enters Maroney Mill Road. They crossed Highway 92 at the 'Stop' sign at 75 to 80 miles per hour. I stopped at the intersection, then gave chase down the Maroney Mill Road and had pulled up to about ten (10) feet of them when they turned off on another dirt road to the left, I think it was Gresham Road. They almost lost control again but straightened out, they went around the slight curve on this road almost in the ditch on the left side of the road traveling north. Then I met a black Mustang traveling south, skidding sideways across the road in front of me. All during this chase, Nina Ann Boyd Walton would look back and forth out of the rear-view window. When this red Corvair skidded off Highway 92 onto the county dirt road, I turned on my revolving red light and siren. I thought several times they were going to stop but didn't. I was in pursuit of them approximately five or six (5 or 6) miles on dirt and paved roads." In further describing the manner in which Walton was operating the Corvair, Smith stated he "ran 'Stop' sign at intersection of Highway 92 and Maroney Mill Road, then reached speeds of 75 to 80 miles per hour on Highway 92, turned off Highway 92 sideways without giving signal, was driving on both sides of the dirt road; then, as we had circled around this dirt road where it crosses Highway 92, ran 'Stop' sign crossing Highway 92 at 80 miles per hour. Then, on Maroney Mill Road, turned left without giving a signal. He was almost in ditch on left side of road going around slight curve on the Gresham Road, forcing

black Mustang off the road." Smith stated that in pursuing the Corvair he had intended to apprehend and arrest its occupants.

In his deposition Smith amplified the above circumstances of the chase, and further stated he was approximately 500 yards behind the Corvair as he began to follow it; that he was following at approximatley the same speed and was about 50 yards behind when they completed the circle on the dirt road back to Highway 92: that the Corvair didn't slow down at the intersection but shot across the highway at the same speed back onto Maroney Mill Road; that after stopping at the stop sign he caught up with the Corvair again on Maroney Mill Road "and I was right on his bumper and this young lady was looking back all the time. It looked like she was telling him what to do, and when he saw I was catching up with him he turned left on Gresham Road and went up that road about three-quarters of a mile, I guess. It was pretty dusty and the last time I saw the red Corvair he was going around this curve on the left-hand side of the road practically in the ditch." At this point he was a "couple of hundred yards" behind them; Smith was traveling approximately 70 m.p.h., and the Corvair was gaining distance. In a matter of seconds after the Corvair went out of view around the curve Glover's Mustang came into view from the opposite direction skidding sideways across the road in front of him, and the collision ensued.

Under these facts it clearly appears that Walton, an additional insured as a permissive-use-driver under Georgia Farm's policy issued to then Nina Boyd,[2] was making an "attempt to resist arrest or flee from justice." The Smiths and State Farm contend that while it is clear Walton was intentionally attempting to escape from Officer Smith at a time prior to the collision, there is no evidence that he was doing so for the last five miles over which he proceeded immediately before the collision occurred. We think, however, that the above recital of the evidence shows without quibble that his course of conduct and manner of driving continued to the time of collision. It is further con-

---

[2]see note 1., supra.

tended that the words "arising from or caused by" contained in the exclusion should be construed in the same manner as causation is understood in the law of negligence. Assuming, without deciding, that this contention is correct, and that Smith's injury must, as contended, have arisen "directly, proximately and immediately" out of Walton's attempt to resist arrest or flee from justice, it is obvious that any liability which could attach to Walton for sending the Glover vehicle out of control and into the path of Smith would so arise. If the jury in the damage actions were to exonerate Walton from liability, then of course Georgia Farm would have no obligation under its policy. If, on the other hand, the jury should find that Walton's manner of operation of the Corvair was responsible for the collision, the exclusion would be applicable since he was attempting to escape from Officer Smith at the time, being AWOL and having committed moving traffic offenses.

Consequently, we must affirm that part of the judgment sustaining Georgia Farm's motion for summary judgment, but must reverse the sustaining of State Farm's motion.

*Judgment affirmed in part; reversed in part. Jordan, P. J., and Pannell, J., concur.*

ARGUED JULY 8, 1970—DECIDED SEPTEMBER 8, 1970.

*Gilbert & Head, Henry C. Head,* for appellants.

*Greer & Murray, Malcolm S. Murray, Tisinger & Tisinger, David H. Tisinger,* for appellees.