HARMON *v* AMERICAN INTERINSURANCE EXCHANGE CO

1. INSURANCE—BINDER—TERMS.

> An insurance binder, in the absence of an express agreement to the contrary, contains the same terms and conditions of insurance policies ordinarily issued by the carrier to cover similar risks, such as provisions relating to cancellation, limitation of actions, and proofs of loss.

2. INSURANCE—BINDER—"FULL COVERAGE"—AUTOMOBILE INSURANCE.

> Automobile insurance agent's assurance to plaintiff that she would have "full coverage" on her automobile did not amount to an express agreement to issue a binder without the exclusions of certain risks ordinarily used in the carrier's policies where the agent understood the term to mean coverage with the ordinary and usual policy exclusions and plaintiff believed the term to mean without any exclusion; there was no. express agreement to issue a binder without the usual and ordinary policy exclusions since the parties had not had a meeting of minds on the issue of exclusions.

Appeal from Jackson, Charles J. Falahee, J. Submitted Division 2 December 15, 1971, at Lansing. (Docket No. 9821.)  Decided March 21, 1972.

Complaint by Bessie L. Harmon against American Interinsurance Exchange Co., and William Larson to recover under an automobile insurance binder. Judgment for defendants. Plaintiff appeals. Affirmed.

---

REFERENCE FOR POINTS IN HEADNOTES

[1, 2]  43 Am Jur 2d, Insurance § 216 *et seq.*

*Rappleye, Bannasch & Wilkins* (by *Ronald E. Machnik*), for plaintiff.

*Cozadd, Shangle & Smith* (by *Daniel J. Andrews*), for defendants.

Before: QUINN, P. J., and J. H. GILLIS and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. The plaintiff Bessie L. Harmon appeals from the nonjury judgment of no cause for action in her action to recover under an alleged binder for automobile insurance entered into with defendant insurance company through its agent, defendant Larson.

Mrs. Harmon was desirous of purchasing a 1965 Dodge for the use and benefit of her son George and her daughter-in-law. One of the requirements of the financing contract was that she would have to have full insurance coverage. This presented difficulties, as her son George had a poor driving record and had been rejected for insurance by at least one company. Mrs. Harmon saw an advertisement appearing in the yellow pages which stated that defendant Larson, an independent insurance agent, was engaged in writing high risk insurance. Mrs. Harmon and her son journeyed to Larson's office on August 17, 1965, explained the situation, and signed an application, after being assured that they would have "full coverage". The application indicated that Mrs. Harmon was the sole titleholder, subject only to the lien of the financing institution; and that the vehicle would be driven by George and his wife. Five days later on August 22, 1965, George took part in a drag race on a public street and thereafter fled from the police at speeds of up

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

to 80 m.p.h.   During this flight he lost control of his car and encountered a tree, from which instant and total demolition resulted.   The next evening Mrs. Harmon contacted Mr. Larson, explained the facts concerning the disaster and again was assured by him that the vehicle was fully covered and that she had nothing to worry about.

About two weeks later the policy itself was delivered to George and it was found to contain several exclusions.   The two with which we are concerned are as follows:

"(i) to loss while automobile is used in a race or speed test.

\*     \*     \*

"(n) while the automobile is used in any illicit trade or transportation or while the automobile is engaged in unlawful flight from the police or other lawful authorities."

Notice of cancellation was received on September 27, 1965, and the defendant insurance company refused to honor the claim made by Mrs. Harmon.

The important issue in this litigation is whether defendant insurance company properly denied coverage on the basis of the above-noted exclusions, where plaintiff was promised "full coverage" and was provided with an oral binder of insurance upon application for the insurance policy.   There is no question that defendant Larson indicated to plaintiff that she had "full coverage", that plaintiff did not see the policy jacket setting forth the exclusions, and that Larson never discussed the exclusions with Mrs. Harmon.   Further, the question of Larson's power to bind defendant insurance company by the oral binder was never raised either below or in this appeal.

The general rule with regard to the nature of binders of temporary insurance is set forth in 43 Am Jur 2d, Insurance, § 219, p 280:

"In the absence of an express agreement, the terms and conditions of such a temporary contract of insurance are those of the policies ordinarily used by the insurance company to cover similar risks, such as terms and conditions relating to cancellation, limitation of actions, and proofs of loss."

In other words, all ordinary provisions and exclusions of policies issued to cover similar risks will be read into the temporary binder, unless there was an express agreement at the time of the issuance of the binder which would make such provisions and exclusions inconsistent with the intent of the binder agreement. See *Robinson* v *United States Benevolent Society,* 132 Mich 695 (1903); *State Automobile Mutual Insurance Co* v *Lloyd,* 54 Tenn App 587; 393 SW2d 17 (1965); *Jennings* v *Illinois Automobile Club,* 319 Ill App 587; 49 NE2d 847 (1943); *Salisbury* v *Hekla Fire Insurance Co,* 32 Minn 458; 21 NW 552 (1884).

Two factors must therefore be considered: (1) Were the above noted exclusions "ordinary"? and (2) If the exclusions were "ordinary", did the term "full coverage" amount to an express agreement which would render the exclusions inconsistent with the binder agreement?

The plaintiff argues that the burden of proof is on the defendants to show that the exclusion relied upon was one normally used in their policies. We agree with this contention. The trial court, sitting as the trier of fact, found:

"I am satisfied, however, that the defendant has proven by a preponderance of the evidence that the policy contained the exclusions mentioned above and that the insured is bound by these exclusions as

well as the other terms of the policy. As previously stated, I find that the driver of the plaintiff's vehicle was engaged in unlawful flight from a police officer when the accident happened. That being the case, coverage is denied under the exclusion in the policy."

The findings of fact of a trial court sitting without a jury will not be reversed unless clearly erroneous. GCR 1963, 517.1. After a thorough review of the record, we cannot say that the trial court's finding was clearly erroneous; the testimony clearly indicating that such exclusions were usual and ordinary.

The next question is whether defendant Larson's assurance that plaintiff would have "full coverage" amounted to an express agreement to issue a binder without exclusions. Plaintiff obviously felt that "full coverage" meant without exclusions, while defendant Larson felt that "full coverage" meant coverage with the ordinary and usual exclusions. As stated in *Smiley* v *Prudential Insurance Co of America,* 321 Mich 60, 66 (1948):

"A contract of insurance rests upon and is controlled by the same principles of law applicable to any other contract. What the contracting parties intended, mutually agreed to, and their minds met upon, is the measure of their obligations."

Since there was no discussion of exclusions and there was an obvious misunderstanding of the meaning of "full coverage", there was not a meeting of the minds; and, therefore, there was no express agreement to issue a binder without the usual and ordinary exclusions. While we sympathize with plaintiff, a layman not schooled in the niceties of insurance law and nomenclature, courts must take people in the position they are found, and cannot protect them against their own foolishness. Prevention of the future occurrence of such an unfortunate situa-

tion would appear to lie in the legislative enactment of a "truth in insurance" statute.

Plaintiff also asserts that said exclusions are contrary to public policy. We find no merit in that contention. In light of the resolution of the above discussed issue, there is no need to comment upon the question of plaintiff's standing to bring her suit.

Affirmed. Costs to defendants.

All concurred.