**SOUTHERN GUARANTY INSURANCE COMPANY, Plaintiff,**

v.

**UNION TIMBER COMPANY, et al., Defendants.**

**Civ. A. No. 88–17–VAL (WDO).**

United States District Court,
M.D. Georgia,
Valdosta Division.

July 2, 1990.

Mark A. Barber and Robert M. Darroch, Darroch & Obenshain, Atlanta, Ga., for plaintiff.

Sutton & Reddick, Berrien L. Sutton, Homerville, Ga., for Union Timber Co. and Robert Sessoms.

William E. Moore, Jr., Valdosta, Ga., for Jones and Priester.

## ORDER

OWENS, Chief Judge.

The above-captioned matter is before this court by virtue of a declaratory judgment action filed by plaintiff Southern Guaranty.[1] On March 22, 1989, this court issued an order denying plaintiff's motion for summary judgment and granting defendants' motion for summary judgment. 708 F.Supp. 1314. The court ruled that Southern Guaranty must pay no fault benefits and defend and indemnify its insured and the permissive users of his vehicle with regard to the injuries of Chad Jones and Juan Tobias arising from their being thrown from it's insured's truck. Southern Guaranty relied upon two exclusions in attempting to deny coverage; however, this court held that, under the facts of this particular case as applied to the case law, the exclusions which Southern Guaranty sought to rely upon were invalid as against public policy.

This matter is before the court again because plaintiff Southern Guaranty requests a clarification of this court's order of March 22, 1989. Southern Guaranty relies upon the case of *Cotton States Mutual Insurance Co. v. Neese*, 254 Ga. 335, 329 S.E.2d 136 (1985), in which the supreme court, in holding an exclusion unenforceable as against public policy, held that the exclusion in question was unenforceable only to the extent of the minimum of the compulsory insurance required by law despite the fact that the vehicle in question was insured in excess of this amount. Under the facts of the present case the insured has $500,000.00 in coverage; however, the minimum required compulsory coverage is $15,000.00 per person. Southern Guaranty argues that under *Neese* its exposure should be limited to the minimum required coverage of $15,000.00 per person for a total of $30,000.00, rather than for the full $500,000.00. Defendants argue that the court in its earlier order implicitly ruled that the full $500,000.00 amount of coverage should apply. Defendant also argues that the two injured boys were not fellow employees or within the scope of their employment when they were injured; therefore, there will be a separate basis for the non-application of the exclusions in question, independent of the public policy reason, and the full $500,000.00 of coverage would apply regardless of whether or not *Neese* would limit coverage to only $30,000.00. All parties agree that the facts are not in dispute.

On June 24, 1987, Robert Frank Sessoms owned land in Clinch County, Georgia, upon which he cultivated blueberries on approximately eight acres. Mr. Sessoms' friend, Winston Peterson, agreed to handle the harvesting of the blueberries while Mr. Sessoms was out of town. Chad Jones and Juan Gordon, minors, along with others, were offered one dollar per bucket to pick

---

1. Although Southern Guaranty is plaintiff in the declaratory judgment proceeding before this court, Southern Guaranty is the defendant in a personal injury claim filed in the Superior Court of Clinch County involving the same parties as in the above-captioned matter. The state court action is stayed pending this declaratory judgment.

the blueberries. Michael Shane Smith was offered twenty dollars to collect the buckets and to pay the pickers the dollar per bucket. Chad Jones and Juan Gordon were not paid any hourly rate and did not receive any money if they did not pick any berries. Michael Shane Smith did not pick blueberries, but was in charge of supervising the pickers, collecting buckets of berries from the pickers and paying the pickers. After accepting the picked berries from the pickers, Smith would load and stack the crates of berries on the truck. Shane Smith also instructed the pickers as to where to pick and which berries to pick. In addition to supervising the pickers at the field, Shane Smith would decide who would be allowed to work and would provide transportation to some of the pickers.

At approximately noon on June 24, 1987, Shane Smith was driving a 1985 Ford F-150 pick-up truck, owned by Frank Sessoms and insured by Southern Guaranty, back into Homerville after a morning of work at the blueberry field. Chad Jones and Juan Gordon who were passengers in the back of the truck were injured when they were thrown from the truck.

Upon receipt of the claim for the injuries of the boys, Southern Guaranty wrote a letter to Robert Sessoms dated December 8, 1987, stating that based upon certain exclusions in his policy, "there may be a question of coverage under the policy." This letter goes on to state, "[t]he purpose of this letter is to point out that there is a possibility that this matter could be covered by Worker's Compensation which would be the exclusive remedy for the claimants" and "[b]ecause of this, it is necessary to reserve our rights that should it be determined that Worker's Compensation coverage applies, our policy would not afford coverage for this loss per the exclusions stated." As noted by this court in its earlier order, plaintiff Southern Guaranty, after discussing the exclusions in question in its brief, states, "[t]he purpose of such exclusions in a liability policy is to prevent an insured from avoiding his responsibility under the workers compensation laws." On page fourteen of its reply brief plaintiff admits that the injured defendants, Jones and Gordon, "were simply farm laborers." However, O.C.G.A. § 34–9–2(a) specifically states that the Worker's Compensation Act does not apply to "farm laborers" or "to employers of such employees."

When deciding whether an exclusion is void as a matter of public policy, each exclusion must be evaluated individually. *Cotton States Mutual Insurance Co. v. Neese,* 254 Ga. 335, 329 S.E.2d 136 (1985). The court must determine in the context of the case whether the exclusion either (1) unfairly penalizes innocent victims or (2) unfairly exposes the insured to liability. *Southern Guaranty Insurance Co. v. Preferred Risk Mutual Insurance Co.,* 257 Ga. 355, 359 S.E.2d 665 (1987).[2] In *Geico v. Dickey,* 255 Ga. 661, 340 S.E.2d 595 (1986), the supreme court held that in view of the overriding policy of complete liability coverage for the protection of the public and the insured, if an exclusion were broader than the tort immunity of the state, then the exclusion would be against public policy.

The recent Georgia Supreme Court case of *Stepho v. Allstate Insurance Co.,* 259 Ga. 475, 383 S.E.2d 887 (1989), discusses several of the cases this court relied upon in its earlier order:

We have held that compulsory insurance is required for the innocent victims of the negligent members of the motoring public. *Cotton States Mutual Insurance Co. v. Neese,* 254 Ga. 335, 329 S.E.2d 136 (1985). We have also held that the legislature intended that Georgia's compulsory insurance law protect the insured from unfair exposure to unanticipated liability. *GEICO v. Dickey,* 255 Ga. 661, 340 S.E.2d 595 (1986).

\*      \*      \*      \*      \*      \*

In *Southern Guaranty Insurance Co. v. Preferred Risk Mutual Insurance Co.,* 257 Ga. 355, 359 S.E.2d 665 (1987), we dealt with a peculiar set of facts

**2.** In *Southern Guaranty,* the court upheld the validity of the exclusion in question upon finding that under the facts of the case there was neither unfair prejudice to innocent victims nor unfair exposure of the insured to unanticipated liability.

under which neither the injured party nor the insured was left unprotected. We therefore concluded that the exclusion clause under those unusual circumstances did not offend public policy and should be upheld.

A clear thread of consistency runs through each of these cases as they apply the dual policies of protection for innocent victims of negligent members of the motoring public and protection of the insured against unfair exposure to unanticipated liability. This results in a basic rule that if either of the interests dealt with in those cases is left unprotected, the exclusionary clause in the insurance contract offends public policy. This rule, of course, does not apply when neither the injured party nor the unsuspecting insured is left unprotected.

In *Stepho*, the court found that the injured party would be left unprotected and, for that reason, held the exclusion to be against public policy and that it therefore must not stand.

The next issue the court decided was whether the exclusion would fail to the full extent of the policy or only to the extent of the mandatory $15,000.00. In limiting the liability of the minimum mandatory $15,-000.00 coverage, the court relied upon *Neese*, which, like *Stepho*, also invalidated an exclusion based upon the public policy that an innocent victim should not be left unprotected. However, the supreme court ended by specifically stating, "[w]e do not reach the question of whether this limitation might apply in a future case like *Dickey*, supra, where the interest protected is that of an insured who is unfairly exposed to unanticipated liability."

Upon careful consideration of the record in the matter presently before this court, the court finds that this is such a case where the interest to be protected is that of protecting an insured from unfair exposure to unanticipated liability.[3] Therefore, this court must answer the question the court specifically failed to reach in *Stepho*.

■ This case is analogous to *Dickey*, in that assuming that the exclusions in question here were held to apply, the exclusions would be broader than the admitted purpose for their existence; the prevention of a double recovery where worker's compensation applies. Therefore this exclusion must fall as it is against public policy.

■ In *Neese*, when deciding that when the interest to be protected is that of an innocent member of the public having an adequate recourse for recovery, public policy limits the amount recoverable to the minimum amount of liability insurance required by law, the court reasoned that "[t]he compulsory insurance law required that these sums be available to compensate injured motorists; it required no more." The court went on to state, "[t]o the extent that the Barracuda was insured for greater sums, such insurance was purchased for the protection of the insureds."[4]

O.C.G.A. § 33–34–4(a)(1) requires as "minimum coverage" liability insurance equivalent to that required by O.C.G.A. § 40–9–37(a), which requires coverage of "not less than $15,000.00" for one person injured, and "not less than $30,000.00" for two or more persons injured. O.C.G.A. § 33–34–3(b) provides "[n]othing in Code Sections 33–34–4 and 33–34–5 shall be construed to prohibit the issuance of policies

---

**3.** Although it could be argued that the interest to be protected in this case is that of innocent members of the public who could be left without a remedy, particularly if the defendants in the suit filed in the Superior Court of Clinch County were judgment proof, the evidence in this case shows that Mr. Sessoms is a business man with his own business, as well as being a landowner. The evidence also shows that Mr. Sessoms purchased additional liability coverage substantially in excess of the required minimum. It only stands to reason that he purchased this optional additional coverage, not merely out of the goodness of his heart, but in order to protect himself and his assets.

**4.** Although the insured had purchased additional sums of insurance for his protection, it cannot be said he was unfairly exposed to unanticipated liability because at the time of the wreck the insured was travelling at approximately 100 miles per hour on the wrong side of the road while trying to outrun a state patrol car. *Dairyland Insurance Co. v. Blaylock*, 193 Ga.App. 175, 387 S.E.2d 405 (1989), is another case where the court found that there was no unanticipated exposure of the insured to liability because Georgia drivers have a statutorily imposed obligation to equip their vehicles with adequate brakes.

providing more extensive that the minimum coverage required by those code sections." Just as there is the public policy that there must be a minimum amount of coverage required so that innocent members of the public who are injured will have a remedy, there is also policy, if not to encourage, at least to allow insureds to purchase additional coverage over and above the required minimums in order to protect themselves and their assets.

As the supreme court stated in *Neese,* although compulsory insurance law requires that certain minimum sums be available to protect innocently injured members of the public; "it requires no more." Because the legislature decided that only a certain minimum sum *must* be available to benefit the public, and that insureds *may* purchase more extensive coverage than the minimum sum for their own protection, the court limited the amount of liability exposure to the minimum amount when the interest to be protected is that of an innocent member of the public injured by a negligent member of the motoring public. In *Neese,* the supreme court also found that to the extent the vehicle was insured for greater sums, "such insurance was purchased for the protection of the insureds." In short, because the interest being protected in *Neese* was not that of the insured but that of the injured member of the public, the court held that public policy only entitled the injured member of the public to the amount of coverage that the insured was *required* to purchase for the benefit of members of the public.

Under the facts presently before this court, the insured, in addition to purchasing the required minimum coverage for the benefit of injured members of the public, also purchased substantially more extensive coverage for his own benefit. Not only would he be protected by a substantial sum of insurance should he ever need it, the insurance company also benefited from the higher premiums paid by the insured in order to obtain this more extensive coverage. This is a case where the interest being protected is that of an insured who would be unfairly exposed to unanticipated liability if the exclusion in question were allowed to stand, and as the court said in *Neese,* any sum of insurance purchased in excess of the required minimum is for the benefit of the insured; therefore, this court finds that the insured should be entitled to the protection of the entire amount of liability coverage that he had the foresight to purchase for his benefit. Accordingly, this court answers the question raised in *Dickey,* and holds that when the interest to be protected is that of an insured who is unfairly exposed to unanticipated liability, the insured is not limited to the minimum coverage required for the benefit of the public, but is entitled to the full amount of coverage purchased for his benefit.[5] Therefore, with this clarification of this court's earlier order, plaintiff's motion for summary judgment remains DENIED and defendant's motion GRANTED.

SO ORDERED.

---

5. As a result of the court's decision, it is unnecessary to decide the issues of whether the boys were injured by a "fellow employee" and whether they were injured "in the scope of their employment."