A94A0733. GENERAL CAR & TRUCK LEASING SYSTEM, INC.
v. WOODRUFF et al.
(447 SE2d 97)

POPE, Chief Judge.

Appellant General Car & Truck Leasing System, Inc. ("General") appeals the grant of summary judgment to appellees Randy Woodruff and Eastern Trailer Sales, Inc. ("Eastern") holding, inter alia, that General was obligated to provide primary liability insurance on a ve-

hicle it rented to appellees.

Woodruff, on behalf of his employer Eastern, rented a vehicle from General. As Woodruff was returning the vehicle to General, he was involved in an accident with Harry and Maxine Tsioumas. Woodruff was cited for following too closely for which he apparently paid a fine. Eastern, which was insured by Commonwealth General Insurance Company ("Commonwealth"), had a rental account with General and had on file with it a certificate of insurance showing General as the certificate holder or loss payee and additional insured. General also carried liability insurance on its own vehicles.

The administratrix of the Tsioumases' estate brought suit against Woodruff, Eastern, General, and Commonwealth. Eastern and Woodruff cross-claimed against General alleging it provided primary liability coverage for the accident pursuant to the rental agreement between the parties. General cross-claimed against Eastern and Commonwealth alleging they were obligated to provide primary coverage. General also claimed that any coverage it did provide was excluded by virtue of Eastern's violation of various terms of the agreement and requested indemnity from Eastern. Both sides filed cross-motions for summary judgment. The trial court granted appellees' motion and denied General's motion, holding that General provided primary coverage under the agreement, that certain exclusions in the agreement were unenforceable, and that Eastern was not required to indemnify General.

1. General argues the trial court erred in finding it provided primary liability insurance because this court has interpreted OCGA § 40-9-102 as requiring the renter to provide primary coverage for the rental vehicle. OCGA § 40-9-102 provides in pertinent part that "[a]ny person who rents motor vehicles from a U-drive-it owner is required to provide his own insurance. . . ." General contends this court's decision in *Jones v. Wortham*, 201 Ga. App. 668 (411 SE2d 716) (1991), interpreted OCGA § 40-9-102 as requiring the renter's insurance to be primary in all instances such that the parties cannot contract otherwise.

*Jones* involved a dispute between a self-insured U-drive-it owner and the renter's insurance carrier concerning who was required to provide primary coverage for the rental vehicle where the rental agreement contained a clause stating that the renter's insurance was primary. 201 Ga. App. at 669. Noting that OCGA § 40-9-102 requires renters to provide their own insurance, we said "[a]lthough the legislature has not spoken to the specific issue raised herein, we have considered the statutes, and we conclude that in the instant case, the operator's insurance should be primary and the owner's insurance should afford excess coverage, if any." Id. at 670. Because this language does not hold that the renter and owner cannot, under any cir-

cumstances, contract between themselves for the owner's insurance to be primary, we find General's argument to be without merit.

2. General next argues that the trial court erred in finding its coverage was primary because Woodruff and Eastern agreed in the rental agreement that the renter would provide primary liability insurance on the rental vehicle. Paragraph 4 on page 1 of the rental agreement provides in pertinent part as follows:

"(a) The vehicle is covered by an automobile liability insurance policy, . . . and Renter being as assured under said policy agrees to comply with and be bound by all the terms, conditions, limitations and restrictions thereof. . . . The liability insurance to be furnished by Owner pursuant to this agreement shall not exceed $300,000 for all injuries resulting from any one accident. The liability insurance extended hereunder (a) excludes coverage of Renter or the driver while the vehicle is used, operated or driven in violation of any of the provisions hereunder. . . .

"(b) Renter may by agreement on page 2 of this contract provide primary automobile liability insurance to protect Owner, Renter and their respective agents, servants and employees covering liability arising out of the ownership, use, operation, maintenance, loading or unloading or condition of the rented vehicle. . . ."

Page 1 of the rental agreement includes a box which contains the following language: "Renter and owner agree that renter shall provide all primary automobile liability insurance coverage and renter specifically acknowledges the terms and conditions of Para 4(b), page 1." Inside the same box, there exist two signature spaces, one marked "owner" and one marked "renter," neither of which contain signatures. The bottom of page 1 contains the following language underneath which appears Woodruff's signature: "Contract on page 1 and page 2 is agreed to by owner and renter."

General argues that Woodruff's signature on the bottom of page 1 indicates his and Eastern's agreement with paragraph 4 (b) providing that the renter would provide primary liability insurance. We disagree. Paragraph 4 (b) states that the renter *may* provide primary coverage by indicating his agreement to do so on page 1. Because Woodruff did not sign the signature blocks indicating his agreement to provide primary coverage pursuant to paragraph 4 (b), we cannot say that he and Eastern agreed in the rental agreement to provide primary liability insurance. Given the lack of signatures or initials in the requisite signature blocks, Woodruff's signature at the bottom of page 1 was not sufficient to indicate his agreement to provide primary coverage under paragraph 4 (b). See *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709, 711 (1) (300 SE2d 673) (1983).

We also reject General's contention that the absence of signatures is immaterial because industry custom dictates that when a

lessee has a certificate of insurance on file with a rental agency, the lessee's insurance shall be primary. The fact that Eastern had a certificate of insurance on file with General indicates General's compliance with the requirement of OCGA § 40-9-102 that a U-drive-it owner determines that a renter has insurance before furnishing a rental vehicle. However, because the rental agreement contains a merger clause stating that "the terms and conditions of the entire contract are set forth on both sides of this instrument," we cannot consider the certificate of insurance in determining which entity is required to provide primary liability coverage under the rental agreement. As such, the trial court correctly found that General provided primary liability coverage under the agreement.

3. General next argues that the trial court erred in denying its motion for summary judgment because, even assuming it did agree to provide primary liability insurance, any such coverage is excluded because Woodruff and Eastern violated several provisions of the rental agreement. Paragraph 1 (a) of the agreement prohibits the renter from operating the vehicle "[i]n violation of any law, ordinance, rule or regulation of any governmental agency or body. . . ." Paragraph 8 provides that the renter "agrees to report any accident loss or damage to the Vehicle to the Owner immediately, and in writing within 24 hours after such accident loss or damage." Paragraph 4 (a) excludes coverage provided by General "while the vehicle is used, operated or driven in violation of any of the [agreement's] provisions." General argues appellees violated paragraphs 1 (a) and 8 of the agreement because Woodruff was cited for following too closely in violation of OCGA § 40-6-49 (a) for which he paid a fine and because appellees failed to provide written notice of the accident within 24 hours of it.

The trial court found an exclusion of coverage for a mere traffic violation was unenforceable as a matter of public policy. General contends, however, that this court's recent decision in *Auto-Owners Ins. Co. v. Jackson*, 211 Ga. App. 613, 615 (440 SE2d 242) (1994), indicates that such an exclusion is enforceable. In *Auto-Owners*, we held that an exclusion for intentionally caused damage was not void as against public policy since the injured third party had access to other insurance funds. Id. at 614-615. Although it is clear that other insurance will be available to the Tsioumases' estate if General's coverage is excluded, *Auto-Owners* is inapplicable to the instant provision since we find that a blanket exclusion for any violation of the motor vehicle code is void as against public policy regardless of whether other insurance coverage is available. In *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335, 338, n. 5 (329 SE2d 136) (1985), the Supreme Court stated that exclusions of liability coverage for speeding, running a red light, or failing to stop at a stop sign would appear to be unenforceable as a matter of public policy. As the Supreme Court

noted in *Cotton States*, were we to accept General's argument, we would be validating exclusions for any minor traffic violation, a result we find unacceptable since we can think of no reason why one would need liability insurance unless there is a possibility of liability such as, for example, running a red light or following too closely. See 254 Ga. at 340. We thus find the trial court did not err in finding paragraph 1 (a) of the agreement to be void as against public policy and in denying General's motion for summary judgment on this issue.

The trial court also found the notice provision of paragraph 8 unenforceable as a matter of public policy. In *Ginn v. State Farm Mut. Auto. Ins. Co.*, 196 Ga. App. 640, 642 (396 SE2d 582) (1990), we reaffirmed that, as to third parties, lack of notice of the accident is not a viable defense to the insurer. Here, however, it is clear that the injured third party has access to other coverage and the owner is seeking to enforce a notice provision as between it and the renter. Given this, we find the trial court erred in holding the notice provision was unenforceable as a matter of public policy as between the renter and the owner. See *Auto-Owners*, 211 Ga. App. at 615; *Travelers Ins. Co. v. Progressive Preferred Ins. Co.*, 193 Ga. App. 864 (389 SE2d 370) (1989).

However, we note that it is undisputed that appellees immediately reported the accident to General as required by paragraph 8. Although General provided affidavits of an area manager and executive vice president that, to their knowledge, no written notice was given General within 24 hours, Eastern contends written notice of the accident damage was given on the day of the accident by writing the damage sustained to the vehicle across the face of General's rental agreement. Based on the above, we find material questions of fact exist concerning whether General received written notice of the accident damage and, if not, whether it was prejudiced by Eastern's failure to comply with this technical requirement. As such, the trial court did not err in denying General's motion for summary judgment on this issue.

4. General's final enumeration is that the trial court erred in denying its motion for summary judgment on the ground that the rental agreement required appellees to indemnify it for all loss, damage and expense resulting from their violation of paragraphs 1 (a) and 8 of the agreement. For the reasons discussed in Division 3 above, we find the trial court did not err in denying General's motion for summary judgment on the issue of indemnification.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Smith, J., concur.*

DECIDED JULY 5, 1994 —
RECONSIDERATION DENIED JULY 28, 1994.

*Sullivan, Hall, Booth & Smith, Jack G. Slover, Jr., A. Spencer McManes, Jr.*, for appellant.

*Smith & Polstra, Gary W. Smith, Savell & Williams, Tash J. Van Dora, Charles M. Dalziel, Jr., Steven R. Thornton*, for appellees.