# First Protection Life Insurance Company

## v.

# Sherman L. Compton

Record No. 820833

October 11, 1985

Present: All the Justices

*Thomas Wolf (Mezzulo, McCandlish & Framme, P.C.*, on briefs), for appellant.
*Barry W. Norwood* for appellee.

COCHRAN, J., delivered the opinion of the Court.

Sherman L. Compton brought this action against First Protection Life Insurance Company (the Company) to recover monthly payments aggregating $914.90 under an alleged oral contract of credit accident and health insurance. A jury returned a verdict for Compton in the amount sued for; the trial court entered judgment on the verdict. On appeal, the dispositive question is whether Compton's advanced arteriosclerosis, known to him when he contracted to purchase the insurance, precluded him as a matter of law from recovering for disability resulting from arteriosclerosis. Holding that Compton could not recover for disability arising from his preexisting condition, we will reverse the judgment of the trial court and enter final judgment in favor of the Company.

On July 17, 1980, Compton purchased a pickup truck from Southside Dodge, Inc., financing the purchase through a bank. According to Compton, William Church, the car salesman, suggested that he purchase accident and health insurance as a part of the transaction. Compton testified that when he asked Church "what was it all about," Church said, "well, if you get sick or have an accident, they make your payment after a period of seven

days." Compton, who had a fifth-grade education, said that he could not read or write but that his wife took care of these functions for him. She corroborated her husband's testimony about the conversation with Church. Compton purchased the insurance. After making two installment payments on the truck, Compton submitted a claim to the Company based upon disability arising from sickness, the first symptoms of which he claimed he noticed on October 3, 1980.

There was evidence that Aubrey Lawrence, III, the general manager of Southside Dodge, handled all insurance matters for the firm. He testified that after he told Compton he could choose payment with no insurance, payment with life insurance, or payment with accident and health insurance, Compton said he wanted to buy accident and health insurance. Lawrence prepared the papers, including a certificate of insurance, but turned over the papers to Church to close the transaction. Lawrence identified the form of insurance certificate he prepared for Compton. Church, who said he had nothing to do with writing insurance, could not positively state that he had delivered the certificate to Compton. Compton denied ever having received it but acknowledged that he thought the bank had a copy of the policy and he would receive his copy later.

Dr. Thomas M. Daniel testified that he operated on Compton, then 33, in December of 1979 for arteriosclerosis, hardening of the arteries, which had affected his left leg. Compton came to Dr. Daniel's office on July 11, 1980, describing "abnormal sensations" in his right foot. He complained that both legs were cramping when he worked. In Dr. Daniel's opinion, Compton still suffered from arteriosclerosis and probably had the disease in both legs. At Compton's request, Dr. Daniel wrote a letter dated July 16, 1980, "To Whom It May Concern," stating that Compton had "advanced atherosclerosis,"[1] which would probably get worse "in the coming years." Compton took this letter to Carolyn C. Shea, workers' compensation supervisor for another insurance company, who was handling the 1979 claim for Compton. Shea testified that Compton told her he felt he had permanent disability in his legs.

Compton did not deny that he had a disease when he bought the insurance but said his doctor told him he "could work ten to

---

[1] Atherosclerosis is a stage of arteriosclerosis. Webster's Third New International Dictionary 137 (1981).

twenty years, and did not have a problem." Compton's claim, submitted to the Company, contained a statement from his physician, Dr. T. R. Butterworth, that his condition resulted from an accident that occurred on October 31, 1979. The Company denied the claim because the certificate of insurance provided coverage only for "(a) injuries sustained during the Term or (b) sickness contracted and commencing more than fourteen days after the effective date . . . . " In reply to the Company's denial of his claim, Compton sent a letter written in his name by his wife stating that the 1979 condition had been corrected. He maintained in the letter that the problem on which his present claim was based had arisen within the preceding 10 to 12 weeks, after his purchase of the insurance.

The Company contends that Compton's evidence shows the parties entered an insurance agreement binding the Company until a written policy could be issued; it argues that the usual contract provision in such policies excluding disabilities resulting from preexisting conditions absolves it from liability in this case. Compton contends the parties were bound by an oral contract based on Church's statement, which he contends obligated the Company to make his payments whether his disability related to a preexisting condition or one arising after the contract was entered. In his testimony, however, Compton admitted that he knew Church's statement did not constitute the entire contract, that he believed the bank received a copy of the written policy, and that he anticipated receiving a copy himself.

An oral binder or contract for temporary insurance pending issuance of a written policy consists, in the absence of special agreement, of the usual provisions of contracts employed to effect like insurance. 2 G. Couch, Cyclopedia of Insurance Law § 14.26 (2d rev. ed. 1984); 43 Am.Jur.2d *Insurance* § 222 (1982); *see De Cesare* v. *Metropolitan Life Ins. Co.*, 278 Mass. 401, 406, 180 N.E. 154, 156 (1932); *Harmon* v. *American Interinsurance Exchange Co.*, 39 Mich. App. 145, 148, 197 N.W.2d 307, 309-10 (1972); *Robinson* v. *State Farm Mutual Automobile Ins. Co.*, 188 Neb. 470, 472, 197 N.W.2d 396, 397 (1972); *Mayo* v. *American Fire & Casualty Company*, 282 N.C. 346, 354, 192 S.E.2d 828, 833 (1972); *cf.* Code § 38.1-332.[2] Where the parties to a

---

[2] Section 38.1-332, a general provision which allows the use of oral binders for temporary insurance, was not applicable to this and other contracts for credit accident and sickness insurance prior to the 1982 amendment of § 38.1-482.1. *See* Acts 1982, c. 223. Appli-

temporary contract for insurance do not specially agree upon all the essential terms, they are presumed to have contemplated the terms, conditions, and limitations of the usual policies covering similar risks. 2 G. Couch, *supra*, §§ 14:16, 14:26; 43 Am.Jur.2d *Insurance, supra*, §§ 167, 222; *see Turner* v. *Worth Insurance Company*, 106 Ariz. 132, 133, 472 P.2d 1, 2 (1970); *Parlier Fruit Co.* v. *Fireman's Fund Insurance Co.*, 151 Cal. App.2d 6, 21, 311 P.2d 62, 71 (1957).

By statute, a policy, certificate, or statement of credit accident or sickness insurance must state, among other things, "a description of the coverage including the amount and term thereof, and any exceptions, limitations, or restrictions." Code § 38.1-482.6(b); *cf.* Code § 38.1-333.[3] Although the parties normally must expressly agree on each essential element of an insurance contract, some of these elements may be supplied by inference in certain circumstances, including cases involving temporary insurance binders. *See Dickerson* v. *Conklin*, 218 Va. 59, 67 n.1, 235 S.E.2d 450, 455 n.1 (1977).

Compton asserts that he and Church expressly agreed that the Company would make his payments after seven days if he became disabled. The jury verdict necessarily was based on a finding of such an agreement. Church's statement, however, was merely a descriptive summary of the nature of the insurance available to Compton, given in response to Compton's general inquiry, rather than a precise, definitive contract term which omitted reference to any exclusions. If Compton experienced disability from disease or injury arising after the effective date of the policy, the Company, as Church explained, would pay. The parties did not discuss exclusions, and there was no indication that Church intended to negate the standard policy exclusions. Although Compton may have assumed that the coverage contained no exclusions, there is no evidence that the Company contemplated compensation in the case of a disability caused by a preexisting condition. There was no

cation of this principle was apparently contemplated by the unamended statute, however, which fixed a time limit for delivery of the policy, certificate, or statement following the effective date of the insurance. *See* § 38.1-482.6(e) (Repl. Vol. 1981).

[3] Section 38.1-333, also not applicable to credit accident and sickness insurance prior to the 1982 amendment of § 38.1-482.1, sets forth six elements which must be specified by insurance contracts in general: the names of the parties, the subject of the contract, the risks covered, the effective date and duration of the coverage, the premium, and the conditions pertaining to the insurance.

meeting of the minds as to the extent of the coverage. Therefore, the parties are presumed to have agreed to the customary provision in accident and health insurance policies which excludes coverage for disability arising from a preexisting condition. Thus, if the contract were a temporary contract for issuance of insurance, the Company is not obligated to make the payments sought by Compton.

Compton, however, in spite of his testimony to the contrary, argues that the parties entered an oral insurance contract complete in itself. While oral insurance contracts are generally enforceable if the essential elements are adequately proven, *see Yates* v. *Whitten Valley Corp.*, 226 Va. 436, 438, 309 S.E.2d 330, 331 (1983), this rule does not apply to an oral contract for credit insurance. The statute governing credit accident and sickness insurance requires that all credit insurance be evidenced by a written policy, certificate, or statement and sets forth the required provisions of such instruments. Code § 38.1-482.6(a), (b). If, as Compton alleges, the oral agreement were the complete contract, it fails to comply with these requirements and is unenforceable. In view of Compton's testimony, however, we hold that he was relying upon a temporary contract.

The statute provides that the policy, certificate, or statement may be delivered to the insured debtor after the time the insurance is effected.[4] Code § 38.1-482.6(e). It is therefore apparent that the General Assembly intended to proscribe only oral contracts of insurance never commemorated by a writing, not oral binders or contracts of temporary credit insurance pending issuance of a written policy. Thus, the Company's theory that the agreement was a temporary binder pending issuance of the policy does not contravene the statute. The contract will be enforced, with the exclusionary provisions of the Company's usual credit insurance policies presumed to be a condition of the oral binder agreement.

In view of our holding, we need not address the other assignments of error. We will reverse the judgment of the trial court and enter final judgment in favor of the Company.

*Reversed and final judgment.*

---

[4] The 5-day period formerly allowed for delivery of the policy was extended to 10 days by the 1982 amendments. Acts 1982, c. 223.