<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-1329**
_____

BANNER LIFE INSURANCE COMPANY,

                Plaintiff - Appellee,

     v.

JACQUELINE L. NOEL,

                Defendant - Appellant.


_____

**No. 12-1498**
_____

BANNER LIFE INSURANCE COMPANY,

                Plaintiff - Appellee,

     v.

JACQUELINE L. NOEL,

                Defendant - Appellant.
_____

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond.  James R. Spencer, District Judge.  (3:11-cv-00434-JRS)
_____

Argued:  December 5, 2012      Decided:  January 22, 2013
_____

Before WILKINSON, NIEMEYER and GREGORY, Circuit Judges.
_____

Affirmed by unpublished per curiam opinion.

———————————————

**ARGUED:** John Tracy Walker, MCGUIREWOODS, LLP, Richmond, Virginia, for Appellant. Robert Barnes Delano, Jr., SANDS ANDERSON, PC, Richmond, Virginia, for Appellee. **ON BRIEF:** Joseph E. Blackburn, Jr., BLACKBURN, CONTE, SCHILLING & CLICK, PC, Richmond, Virginia, for Appellant.

———————————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Banner Life Insurance Company (Banner) filed for a declaratory judgment in the United States District Court for the Eastern District of Virginia seeking to limit its obligations under a binder of temporary insurance entered into with Gary Noel. Jacqueline Noel, the beneficiary of the policy, opposed the action and filed a counter-claim for breach of contract. Following cross-motions for summary judgment, the district court granted Banner declaratory judgment limiting its obligations under the binder to remitting the premium paid by Gary. For the following reasons, we affirm.

I.

A.

On November 30, 2010, Gary and Jacqueline met with Banner Life Insurance agent Christopher Roberts to purchase a $1 million life insurance policy on Gary's life. During the meeting, Gary completed three documents as part of the application packet. The first document, labeled Part 1, contained biographical questions; the second document, labeled Part 2, examined medical history; and the third document, entitled "Temporary Insurance Application and Agreement" (TIAA), allowed for temporary insurance coverage pending approval of the full policy.

3

When filling out Part 2, Gary was required to truthfully provide information about his medical history. Despite this, Gary failed to disclose his history of elevated liver function tests, an abnormal abdominal liver ultrasound, and that his primary care physician referred him to a gastroenterologist. Gary also denied having sleep apnea and did not disclose that his doctor recommended he consult with a sleep disorder specialist. Jacqueline acknowledges that Gary was required to disclose this information.

After filling out Part 1 and Part 2, Gary had the option of filling out the TIAA. The approval of the life insurance policy was not contingent upon completion of the TIAA. The TIAA contained four yes or no questions, all of which had to be answered no to be eligible for temporary coverage. At the bottom of the TIAA was a provision entitled "Other Limitations," which read in pertinent part: "The Insurer's liability will be limited to a return of the Amount Remitted if . . . any part of the life insurance application or this TIAA contains a misrepresentation material to the Insurer." Gary answered all four questions "no," presumably read the provision at the bottom, and signed the TIAA. Gary remitted payment for the TIAA in the amount of $913.90. Banner acknowledges that Gary filled out the TIAA truthfully.

4

After Gary completed and signed all three documents, Roberts submitted the application packet to Banner's underwriting department. A Banner underwriting consultant, Sean Lucas, reviewed Gary's application packet. Because Gary admitted to a history of hypertension when completing Part 2, Lucas ordered and obtained a copy of Gary's medical records from his primary care physician. Upon review of the records, Lucas learned of Gary's undisclosed medical problems, and as a result, was unable to make a recommendation of approval for Gary's application. Before he could approve Gary's policy, Lucas requested that Roberts follow up with Gary regarding the gastroenterologist referral. Roberts obliged, and informed Lucas on January 31, 2011, that Gary did not follow up on the referral.

On Thursday, February 3, 2011, Lucas completed his review of Gary's application and forwarded it to Banner's medical director. He recommended postponing approval of the policy pending additional follow-up and definitive diagnosis for the cause of Gary's elevated liver tests. Gary died sometime between Sunday, February 6, and Monday, February 7, before Banner was able to notify Gary that it was postponing issuing the life insurance policy. On July 5, 2011, Banner sent Jacqueline a letter denying her claim for benefits under the TIAA due to the misrepresentations made in Part 2 of the

5

application. Enclosed with the letter was a check refunding Gary's premium payment.

B.

On July 6, 2011, Banner filed a declaratory judgment action in the district court seeking to either rescind the TIAA or have the court declare that its obligations were limited to a return of the premium paid by Gary. Jacqueline answered, denying that Banner was entitled to rescission, claiming that Banner was estopped from rescission, and counterclaiming for breach of contract and attorneys' fees. At the close of discovery both parties moved for summary judgment.

On February 15, 2012, the district court granted Banner's motion for summary judgment, asserting that Part 1, Part 2, and the TIAA formed a single contract; that the misrepresentations made in Part 2 were material to Banner; and as a result, Banner's obligations were limited to returning the premium paid by Gary per the terms of the TIAA. Banner Life Ins. Co. v. Noel, 861 F. Supp. 2d 701 (E.D. Va. 2012). In a corollary matter, on April 5, 2012, the district court awarded Banner attorneys' fees for having to defend a motion to compel discovery.

Jacqueline timely appealed, challenging the district court's grant of summary judgment and award of attorneys' fees.

6

II.

Jacqueline first argues that the district court erred in granting Banner's motion for summary judgment, limiting Banner's obligations to returning the premium paid by Gary. We review a grant of summary judgment de novo. Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

The TIAA entered into by Banner and Gary was an independent binder of insurance.[1] The clause in the TIAA, "Other Limitations," instructs that any material misrepresentations contained in the life insurance application packet as a whole limits Banner's obligations under the agreement. Jacqueline does not argue that there were no misrepresentations in Part 2 of the application. Therefore, the pertinent question before the Court is whether the misrepresentations were material to Banner, limiting its obligations under the agreement to returning the premium paid by Gary.

---

[1] A "binder" is defined as: "An insurer's memorandum giving the insured temporary coverage while the application for an insurance policy is being processed or while the formal policy is being prepared." Black's Law Dictionary 190 (9th ed. 2009).

Despite the district court's finding to the contrary, the TIAA was intended to be an independent contract consistent with Virginia law. See Va. Code. Ann. § 38.2-304; First Protection Life Ins. Co. v. Compton, 335 S.E.2d 262 (Va. 1985). This error is inconsequential given that the TIAA incorporates by reference the entire application packet.

"A fact is material to the risk to be assumed by an insurance company if the fact would reasonably influence the company's decision whether or not to issue a policy." Mut. of Omaha Life Ins. Co. v. Echols, 154 S.E.2d 169, 172 (Va. 1967). Materiality is assessed from the vantage point of the insurance company and the effect of a misrepresentation on the company's "investigation and decision." Jefferson Standard Life Ins. Co. v. Clemmer, 79 F.2d 724, 733 (4th Cir. 1935). Misrepresentations have been considered material when the insurer would have issued the policy on different terms, see Minn. Lawyers Mut. Ins. Co. v. Hancock, 600 F. Supp. 2d 702, 709 (E.D. Va. 2009); or postponed issuing the policy, see Parkerson v. Fed. Home Life Ins. Co., 797 F. Supp. 1308, 1312, 1314-15 (E.D. Va. 1992).

The evidence on the record shows that the misrepresentations made by Gary in Part 2 of the life insurance application packet caused Banner to postpone issuing Gary's life insurance policy. Both Lucas and Banner's Chief Underwriter testified that an essential element to issuing an insurance policy is risk assessment, which necessarily depends on the truthful disclosure of an applicant's medical history. Lucas testified that because of Gary's undisclosed medical history, he recommended "postpon[ing] [the] case pending additional work up and definitive diagnosis for cause of elevated liver function

8

tests." As a result of Gary's omissions, Banner's Medical Director agreed with Lucas's assessment and officially decided to postpone issuing a policy.[2]

It is evident that Gary's undisclosed medical history prompted Banner to postpone issuing the insurance policy. Therefore, Gary's misrepresentations are considered material under Virginia Law. See Parkerson, 797 F. Supp. at 1312, 1314-15 (finding that postponement of a decision shows materiality); Mut. of Omaha Ins. Co., 154 S.E.2d at 171-73 (same).

Jacqueline tries to limit the terms of the TIAA, asserting that any misrepresentation must be material to the issuance of the TIAA itself. The TIAA does not limit materiality in the manner Jacqueline suggests. The TIAA "Other Limitations" provision only requires that a misrepresentation be material to Banner – a material misrepresentation can be found in any part of the application packet.[3] Accordingly, the

---

[2] Jacqueline implicitly concedes that the misrepresentations were material to Banner issuing the life insurance policy. See Appellant's Br. 19 ("This clearly shows that Banner is relying on statements made in Part 2 to issue an insurance policy, not [to] temporarily bind coverage under the TIAA.").

[3] Jacqueline also argues that since Banner found out the information independent of Gary's misrepresentations, that they cannot be considered "material." This argument is baseless. What was omitted, no matter how it was discovered, caused Banner to delay issuing Gary a policy.

misrepresentations made by Gary in Part 2 of the application packet were material to Banner issuing Gary's policy given that they led to a postponement of Banner's decision. Under the plain terms of the TIAA, Banner's obligations were limited to remitting the premium.[4]

## III.

Jacqueline also argues that the district court erred in granting Banner attorneys' fees for having to contest a motion to compel discovery. Jacqueline does not challenge the court's ruling on the motion. We review an award of attorneys' fees for abuse of discretion. Robinson v. Equifax Info. Serv., LLC, 560 F.3d 235, 243 (4th Cir. 2009) (citation omitted).

On November 23, 2011, Jacqueline moved to compel discovery as to the meaning of a term used in Banner's notation system. This was in spite of the fact that Banner had previously answered the same question in an interrogatory and Jacqueline had the opportunity to depose Banner employees.

---

[4] The parties seek to embroil the Court in a debate on the principles of equity, asserting a number of equitable remedies and defenses. Because this dispute is easily resolved per the unambiguous terms of the contract, we will not be baited into an unnecessary debate. See Catholic Soc. of Religious Literary Educ. v. Madison Cnty., 74 F.2d 848, 850 (4th Cir. 1935) (a "fundamental rule in equity in the federal courts is that a suit will not lie when there is an adequate remedy at law").

Banner opposed the motion, arguing that its initial answer was sufficient and requesting costs for having to defend the motion. In an order dated December 15, 2011, the district court denied Jacqueline's motion, finding that Banner's answer to the interrogatory was sufficient. The district court further awarded Banner attorneys' fees in the amount of $1,311 - the cost of responding to the motion.

The district court essentially awarded attorneys' fees because it found that Jacqueline's motion to compel discovery was cumulative. Furthermore, the court only awarded attorneys' fees for the single motion. Because the award of attorneys' fees was not "clearly wrong," see Plyer v. Evatt, 902 F.2d 273, 277-78 (4th Cir. 1990), the district court did not abuse its sound discretion.

IV.

Because the clear terms of the TIAA limit Banner's obligations to remitting the premium paid by Gary, and the award of attorneys' fees was well within the district court's discretion, the district court's judgment is affirmed.

AFFIRMED.

11